IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ALTON LOGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 09 cv 5471 |
| v. | ) |
| | ) |
| JON BURGE, GEORGE BASILE, the CITY | ) |
| OF CHICAGO, and UNIDENTIFIED | ) |
| EMPLOYEES OF THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, ALTON LOGAN, by his attorneys, LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO, JON BURGE, GEORGE BASILE, and UNIDENTIFIED EMPLOYEES of the CITY OF CHICAGO acting pursuant to the City's policies and practices (collectively, "Defendants"), alleges as follows:

### Introduction

1.  In 1983, Alton Logan was convicted of a brutal murder that he did not commit.  This wrongful conviction was the result of misconduct by the Defendants, who conspired to build a false case against him irrespective of his guilt or innocence.

2.  Plaintiff served twenty-six years of wrongful imprisonment before he was ultimately exonerated by physical evidence and eyewitness testimony, the results of which proved that he was not the murderer.

3.  Although Plaintiff has won back his freedom, he will never regain the decades lost in his life.  This lawsuit seeks redress for those injuries.

**Jurisdiction and Venue**

4.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

5.    This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  Venue is proper under 28 U.S.C. § 1391(b).  The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

**The Parties**

6.    Plaintiff Alton Logan is a 56 year-old resident of Chicago, Illinois.

7.    Defendant City of Chicago is a municipal entity.

8.    At all times relevant hereto, Defendants Jon Burge and George Basile were police officers in the Chicago police Department.  Both are sued in their individual capacities, and acted under color of law and within the scope of their employment during the investigation of the murder at issue.

9.    Defendant Burge was one of the arresting officers of Plaintiff, and one of the lead investigators for the crime at issue.  Defendant Basile assisted with the investigation.

**The Crime At Issue**

10.  On January 11, 1982, Alvin Thompson, an off-duty Cook County Sheriff's Officer, and Lloyd Wyckliffe, an off-duty sergeant with the Cook County Department of Corrections, were working as security guards at a McDonald's restaurant at 11421 South Halsted in Chicago, Illinois.

11. At approximately 8:00 p.m. Mr. Thompson noticed a black man, later identified as Edgar hope, Jr., causing a disturbance at the register by repeatedly changing their orders. Mr. Thompson and Mr. Wyckliffe then proceeded to walk over to the cashier, Antonette Dawson.

12. As the two guards neared the counter, a man walked into the restaurant, hollering something which caused Mr. Wyckliffe to turn towards him. As Mr. Wyckliffe turned, the man pulled a sawed-off shotgun out from underneath his long coat and fired into Mr. Wyckliffe's chest.

13. When Mr. Wyckliffe dropped to the floor, Hope ran up to Mr. Thompson and knocked him to the floor. As Mr. Thompson lay on his back, he saw the man searching through Mr. Wyckliffe's clothing and take Mr. Wyckliffe's gun.

14. Mr. Hope then took Mr. Thompson's gun as well and put it in his waistband. Directly after taking the gun, Mr. Hope shot Mr. Thompson.

15. Mr. Wyckliffe died immediately after being shot; Mr. Thompson was treated at an area hospital, after which he was interviewed by the Chicago Police Department, where he provided a physical description of the attackers.

### Defendants' Misconduct

16. There was never any physical evidence tying plaintiff to this crime. None of his fingerprints or DNA were found at the crime scene, nor was any incriminating evidence of any kind ever discovered in his possession.

3

17. In fact, the only physical evidence found in this case exclusively implicated Edgar Hope and Andrew Wilson.

18. Several weeks after the shooting, Mr. Hope killed a Chicago Police Officer on a CTA bus in Chicago with the gun that he had stolen from Mr. Thompson.

19. Additionally, the Chicago Police Department found incriminating evidence linking Andrew Wilson to the McDonald's murder when they retrieved the shotgun used by Mr. Wilson to kill Mr. Wycliffe in a beauty shop where Mr. Wilson was known to stay.

20. Shortly before his death, the true murderer in this case, Andrew Wilson, provided sworn testimony that revealed facts never before known to Mr. Logan or his attorneys at the time of Mr. Logan's criminal trial. Less than a week after Alton Logan was arrested for murder in this case, Mr. Wilson and his brother were involved in murdering two other police officers on the south side of Chicago. Defendant Burge was the arresting officer of Andrew Wilson for the murder of these Officers. At the time of his arrest, Mr. Wilson was in possession of the .38 caliber gun he had stolen from Mr. Wycliffe before killing him.

21. According to Mr. Wilson, Defendant Burge seized the McDonald's murder weapon from Mr. Wilson. Defendant Burge, in his scope of duty as a Chicago Police Department Officer, failed to disclose this exculpatory evidence while Plaintiff lost twenty-six years of his life.

22. Mr. Wilson was never charged with, or prosecuted for this crime. Instead, rather than continue to perform the

4

police work necessary to properly solve the crime, the Defendants instead conspired among themselves and with others to shortcut the process. Specifically, the defendants unjustly singled out the Plaintiff, who had already been accused of the crime, and then endeavored to stretch and manipulate the facts and the evidence to fit the false hypothesis that he was guilty.

23. Thomas Bennett, a licensed attorney and former Chicago Police Department Detective, disclosed under oath that Defendant Burge openly bragged about Mr. Logan being wrongfully convicted and that the real murderer was Mr. Wilson. Defendant Burge had access to exculpatory evidence that would have prevented Mr. Logan from being wrongfully deprived of twenty-six years of his life in prison. Not only did Defendant Burge withhold such information from Mr. Logan and the court, but he boasted about doing so.

24. In that regard, the defendants manufactured "evidence" that falsely implicated Plaintiff. This fabrication of evidence included, but was not limited to, unlawfully manipulating witnesses, namely Antoinette Dawson and Charles Trent, to falsely implicate Plaintiff by means of improper suggestiveness and outright coercion, all of which violated Plaintiff's constitutional rights. Both Dawson and Trent have signed affidavits attesting to police this manipulation.

25. The Defendants also disregarded and/or destroyed exculpatory evidence, to wit, police reports, notes, and statements that should have been preserved along with the rest of

5

the Chicago Police Department's files, but were not.  This
includes the missing set of street files and police reports
dealing with events that have never been disclosed to Plaintiff
or his attorneys.

26.  For example, Defendants held a line-up that took
place at Cook County Jail.  The fact of this lineup was never
documented in any police reports turned over to Mr. Logan or his
defense team.  Had it been disclosed, it would have been
exculpatory.

27.  The Defendants also deliberately and affirmatively
failed to disclose information pertaining to investigations that
established the guilt of individuals other than Plaintiff.
Consistent with that endeavor, Defendants unlawfully suppressed
information that would have implicated others and thereby
exonerated Plaintiff.

28.  The Defendants also withheld from the prosecutors
and from plaintiff other evidence that was both exculpatory and
material.  This unconstitutional conduct included, but was not
limited to, withholding knowledge of the existence of monetary
considerations made to key witness(es) in this and related cases,
the circumstances of which would have been exculpatory.

29.  The identification procedures utilized by the
Defendants, both visual and voice, were unduly suggestive and
otherwise improper.  As a result of these unduly suggestive and
improper procedures, plaintiff was falsely identified, both prior
to and then again at trial.

30.  As complaining witness(es), the Defendants also testified falsely about Plaintiff's purported guilt at Plaintiff's criminal trial.  Defendant Burge testified again at Plaintiff's sentencing hearing in support of the State's effort to secure the death penalty.

### The Malicious Prosecution

31.  In January of 1983, Plaintiff stood trial for the murder of Lloyd Wycliffe.

32.  Plaintiff testified in his own defense that he had nothing to do with the crime, and his mother and brother provided alibis confirming that he had not yet left the house at the time that the murder was reported to have taken place.

33.  Plaintiff was nonetheless convicted of murder, attempted murder, and armed robbery, all as a proximate result of the above-described misconduct on the part of the Defendants. But for Defendants' misconduct, Plaintiff would have been neither prosecuted nor convicted.

34.  Following his wrongful conviction, Plaintiff was sentenced to life without the possibility of parole.  His post-trial motions and appeals, both state and federal, were continuously denied.

### Plaintiff's Exoneration

35.  Throughout his incarceration, Plaintiff pleaded with the judicial system to hear evidence concerning his innocence and Mr. Wilson's guilt.

7

36.    Mr. Wilson died in 2008.   Directly thereafter,
Dale Conventry and Jameson Kunz, Mr. Wilson's former attorneys
from the Cook County Public Defender's Office, disclosed to the
court that they had an affidavit pertaining to Plaintiff's
innocence and Mr. Wilson's guilt in this case.

37.    Despite knowing the truth about who really
committed this crime, these lawyers were duty-bound to stand by
silently, even as Mr. Logan fruitlessly pressed his claims of
innocence over the years in the courts.

38.    After a lengthy evidentiary hearing, Mr. Logan had
his conviction overturned.   Plaintiff was subsequently fully
exonerated when he was granted a Certificate of Innocence earlier
this year.

### Plaintiff's Damages

39.    At the time he was wrongfully accused of murder,
Plaintiff was a 28 year-old man.   He lived at home with members
of his family and worked hard to support them.

40.    In serving more than twenty-six years behind bars,
Plaintiff was wrongfully deprived of nearly half of his life.
Plaintiff was stripped of the various pleasures of basic human
experience, which all free people enjoy as a matter of right.   He
missed out on the ability to share holidays, births, funerals,
and other life events with loved ones, and the fundamental
freedom to live one's life as an autonomous human being.

41.    As a result of his wrongful incarceration,
Plaintiff must now attempt to rebuild his life outside of prison,

8

all without the benefit of the life experiences that ordinarily equip adults for that task.

### Policies and Practices: Chicago's "Street Files"

42. The unconstitutional withholding of exculpatory information from Plaintiff's defense in this case, as well as the subsequent destruction of some of the same, was all undertaken pursuant to, and proximately caused by, policies and practices on the part of the Chicago Police Department.

43. Specifically, at all times relevant hereto, members of the Chicago Police Department, including but not limited to the Defendants in this action, systematically suppressed Brady material by intentionally secreting discoverable information in so-called "street files." As a matter of widespread custom and practice, these clandestine street files were routinely withheld from the State's Attorney's Office and from criminal defendants and were subsequently destroyed.

44. Consistent with the municipal policy and practice described in the preceding paragraphs, employees of the City of Chicago, including but not limited to the named Defendants, concealed exculpatory evidence within street files which were never disclosed to Plaintiff's criminal defense team and which have since been destroyed. This withholding and destruction of evidence which would have exonerated Plaintiff was undertaken pursuant to the City's policy and practice in the manner described above.

9

45.   The policy and practice described in the foregoing paragraph was consciously approved at the highest policy-making level for decisions involving the police department, and was a proximate cause of the injuries suffered here by the Plaintiff.

### Further Policies and Practices: Malicious Prosecution

46.   In addition to the foregoing, Plaintiff was also the victim of, and his injuries were proximately caused by, a policy and practice on the part of the City of Chicago to pursue and secure false convictions through profoundly flawed investigations.

47.   Specifically, throughout the 1970s and 1980s, and continuing thereafter, a group of Chicago Police Officers under the tutelage of Jon Burge, including some or all of the Defendants herein, engaged in a systematic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process.

48.   This institutional desire to "solve" crimes more expediently regardless of guilt or innocence, in order to enhance officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

49.   The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Chicago Police Department during the time period at issue, was able to exist and thrive because municipal policymakers with authority over the same exhibited deliberate indifference to the problem.

10

50. In addition to Plaintiff, there are now dozens of other known victims of similar abuses, though there may well be many more. At least thirteen criminal defendants victimized by this practice were wrongfully sentenced to death.

51. The widespread practices described in the preceding paragraphs were allowed to take place because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining police officers accused of the type of misconduct which befell Plaintiff was, and is, for all practical purposes, nonexistent.

52. Chicago police officers who manufactured criminal cases against individuals such as Plaintiff had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the misconduct at issue in this case.

**Count I -- 42 U.S.C. § 1983**

**Due Process**

53. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

54. As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of

their employment, deprived Plaintiff of his constitutional right to a fair trial.

55. In the manner described more fully above, the Defendants and/or other Chicago employees and agents deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the prosecution of Plaintiff. These individuals also engaged in the unduly suggestive identification procedures, as described above. Absent the totality of this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

56. The above-described misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fifth and Fourteenth Amendment to the United States Constitution.

57. As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

58. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

59. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above. In this way, the City of Chicago violated Plaintiff's rights through

12

the actions of its agents by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

## Count II -- 42 U.S.C. § 1983
### Malicious Prosecution

60.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

61.  Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

62.  The Defendants identified above accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

63.  Statements of the Defendants regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured.  In so doing, the Defendants fabricated evidence and withheld exculpatory information.

64.  As a result of this malicious prosecution, Plaintiff's constitutional rights were violated, and he suffered other injuries, including but not limited to loss of liberty, as is more fully alleged above.

13

65.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

## Count III -- 42 U.S.C. § 1983

### Failure to Intervene

66.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

67.  In the manner described above, during the constitutional violations described above, one or more of the Defendants and/or other unnamed Chicago Police Officers stood by without intervening to prevent the misconduct.

68.  As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

69.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

70.  The misconduct described in this Count was undertaken pursuant to Chicago's policy and practice in the manner described in preceding paragraphs.

## Count IV -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

71.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

14

72.  After the murder at issue, the Defendants reached an agreement amongst themselves to frame Plaintiff for the crime, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

73.  Independently, before and after Plaintiff's convictions, each of the Defendants further conspired, and continue to conspire, to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

74.  In this manner, the Defendants, acting in concert with other unknown co-conspirators, including persons who are not members of the Chicago Police Department, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

75.  In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

76.  As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

77.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

78.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the City of Chicago with final policymaking authority.

## Count V -- State Law Claim
## Malicious Prosecution

79.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

80.  Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

81.  Defendants accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

82.  Statements of the Defendants regarding Plaintiff's alleged culpability were made with knowledge that said statements were false and perjured.  In so doing, the Defendants fabricated evidence and withheld exculpatory information.

83.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

16

84.  As a result of this misconduct, Plaintiff sustained, and continues to sustain, injuries including pain and suffering.

## Count VI -- State Law Claim

## Intentional Infliction of Emotional Distress

85.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

86.  The acts and conduct of the Defendants as set forth above were extreme and outrageous.  The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

87.  Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

88.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

89.  As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## Count VII -- State Law Claim

## Civil Conspiracy

90.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

91.   As described more fully in the preceding paragraphs, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

92.   In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

93.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

94.   As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## Count VIII - State Law Claim

## Respondeat Superior

95.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

96.   In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department acting at all relevant times within the scope of employment and under color of law.

97.   Defendant City of Chicago is liable as principal for all torts committed by its agents.

18

## Count IX - State Law Claim

### Indemnification

98. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

99. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

100. The Defendant Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, ALTON LOGAN, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, JON BURGE, GEORGE BASILE, and other AS-YET UNIDENTIFIED CHICAGO POLICE OFFICERS, awarding compensatory damages, costs, and attorneys' fees against each of the individual Defendants, as well as any other relief this Court deems appropriate.

19

**JURY DEMAND**

Plaintiff, ALTON LOGAN, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


_____
Attorneys for Plaintiff


Arthur Loevy
Jon Loevy
Mike Kanovitz
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900