IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALTON LOGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09 cv 5471 |
| v. ) | |
| ) | |
| JON BURGE, GEORGE BASILE, the CITY ) | Judge Elaine Bucklo |
| OF CHICAGO, and UNIDENTIFIED ) | |
| EMPLOYEES OF THE CITY OF CHICAGO, ) | Magistrate Judge Mason |
| ) | |
| Defendants. ) | |
| ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT
CITY OF CHICAGO'S MOTION TO BIFURCATE**

Plaintiff ALTON LOGAN, by and through his attorneys LOEVY & LOEVY, and submits the following response to Defendant City of Chicago's Motion to Bifurcate §1983 Claims and to Stay Discovery and Trial on Those Claims.

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
Tara Thompson
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

**Introduction**

Courts in this District have split on <u>Monell</u> bifurcation, with plenty of decisions going both ways on the question. While there are undoubtedly plenty of cases where bifurcation makes practical sense, this case is simply not one of them. Quite the opposite, the factual underpinning of the claims brought against the City are so inextricably intertwined with the claims against the Individual Defendants that any attempt to draw an artificial line would only invite endless disputes. Ironically, the parties here already know this from prior experience, *i.e.,* another case where the same two law firms defending the City and the Plaintiff litigated a very similar wrongful conviction scenario involving the same <u>Monell</u> claims, a case discussed in which Judge Coar denied <u>Monell</u> bifurcation (and later summary judgment as well).

Finally, as also explained below, there is a critical "liability gap" presented by this fact pattern which requires the <u>Monell</u> claims to be tried along with the claims against the Officers. Doing otherwise creates the very real risk that the case would have to be tried twice, should Plaintiff establish a constitutional violation but remain unable to attribute it to any particular police officer. This factor alone makes bifurcation untenable here.

**I.     Legal Standard**

Bifurcation is generally disfavored. <u>Terrell v. Childers</u>, 1996 WL 385310, at *14 (N.D.Ill. July 3, 1996) (Aspen, J.) ("I proceed from the position of the Federal Rules of Civil Procedure; specifically, that the unitary resolution of lawsuits is sought. A single trial on the merits of all contested issues and claims of the parties is preferable to their piecemeal adjudication") (citing Rule 42 Advisory Committee Notes and 9 Wright & Miller, *Federal Practice & Procedure*, § 2388). The burden is on the proponent to justify that relief. <u>See Caterpillar, Inc. v. Deere & Co.</u>, 1997 WL 17798, at *1 (N.D.Ill. Jan. 14, 1997).

Faced with the question now facing this Court, "[c]ourts in our district have both granted and denied similar motions by the City." <u>Ojeda-Beltran v. Lucio</u>, 07 C 6667, 2008 WL 2782815, at *1 (N.D.Ill. July 16, 2008), citing <u>Cadiz v. Kruger</u>, No. 06-C-5463, 2007 WL 4293976, at *2 (N.D.Ill. Nov. 29, 2007); <u>Elrod v. City of Chicago</u>, No. 06-C-2505, 2007 WL 3241352, at *1-*2 (N.D.Ill. Nov. 1, 2007). According to Judge Aspen in <u>Ojeda-Beltran</u>, "these decisions reflect a case-specific assessment of the advantages and disadvantages of bifurcation." 2008 WL 2782815, at *1 (a ruling on bifurcation "will consider the principles in light of the facts of this case and the parties' arguments").

Upon scrutiny, the cases in this District where a motion to bifurcate was denied are far more analogous to the case at bar. In the instant case, like the others where courts have rejected

similar motions, the nature of the policy claims is such that the proof which the City seeks to "moot" is going to be central to the evidence presented at trial concerning the underlying liability of the individual defendants, regardless of the fate of the municipal liability claim. Thus, the proposed efficiencies extolled by the City in purportedly dispensing with certain supposedly "burdensome" categories of proof are wholly nonexistent here.

## II. It Would Be Prohibitively Impractical To Try To Birfucate The Plaintiff's Street Files Policy And Practice Claim

Though styled as a Rule 42(b) motion to bifurcate, the City's motion actually seeks more than bifurcation in the usual sense of that term. Bifurcation ordinarily implies a structure of the issues, whereby one is resolved before another. What the City has in mind here is actually more of a motion to extinguish the policy claim altogether, such that it never gets tried, adjudicated, or otherwise resolved on the merits. This relief is inappropriate here for the following reasons.

### A. Plaintiff's "Street Files" Policy And Practice Claim

By way of background, Plaintiff alleges that in the 1970s and early 1980s, the City of Chicago had a policy and practice whereby of concealing exculpatory information relating to their homicide investigations in what are known as "unit files" and "street files," *i.e.,* private files maintained by the detectives which were then withheld from criminal defendants during the discovery process. The existence of this practice came to light only after the McDonald's murder for which Plaintiff was wrongfully convicted when, in mid-1982, a Chicago Police Detective named Frank Laverty "blew the whistle." Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988) ("street files. . .were files that the police did not turn over to the state's attorney's office as they did with their regular investigative files. As a result, the street files were not available to defense counsel even if they contained exculpatory material. We use the past tense because the practice was discontinued following a class-action [Palmer] suit (inspired by the disclosure [by Detective Laverty in the Jones case] of the existence of the street files) to enjoin the practice").[1]

---

[1] Laverty was dealt with harshly for revealing the secret of the street files, effectively destroying his career. As the Seventh Circuit explained:
> Although another panel of this court has said that Laverty should have been commended "for his adherence to the principles of honesty, decency, and justice," instead the police department charged him with a disciplinary infraction for having failed to advise the state's attorney that he planned to testify for the defense in George Jones's criminal trial should that become necessary. He was also transferred out of the detective division, ostracized by his fellow officers, and assigned to a series of menial tasks culminating in the monitoring of police recruits giving urine samples. None of the defendants has been disciplined for misconduct in the arrest and prosecution of George Jones.

Jones, 856 F.2d at 991-92.

After Laverty's disclosure, the Palmer case followed, and the street files practice was preliminarily enjoined by Judge McMillen of the Northern District of Illinois. Palmer v. City of Chicago, 562 F.Supp. 1067, 1069 (N.D.Ill. 1983). At the conclusion of an evidentiary hearing, Judge Shadur made a series of factual findings, including:

> "[14(b)] Before institution of this action neither the existence of street files nor the separate maintenance (apart from Official Reports) of other potentially exculpatory materials was a matter of public knowledge, so that counsel for criminal defendants were wholly unaware of any need to draft requests for subpoenas and discovery motions broadly enough to encompass documents not contained with the Official Reports."
>
> "[15] Before institution of this action, Department. . . responded to discovery efforts by criminal defendants. . . [by producing] only the Official Reports maintained at Police Headquarters. . . and not the Unofficial Reports maintained at Area detective facilities or in the possession of an individual detective. . ."
>
> "[9] Existence of Unofficial Reports was well known throughout Department before the institution of this action. However, before the promulgation of [Notice 82-2] on April 20, 1982, Department took no official cognizance of and had no official policy concerning Unofficial Reports. . . [which] were regularly maintained at the Areas' detective facilities during the course of an ongoing investigation."
>
> "[7(b)] City Defendants contend: 'At all times relevant hereto the policy of the Chicago Police Department has been that all official reports prepared in the course of a violent felony investigation must be complete and accurate [and] must contain all information known to the preparer(s) which pertains to the offense or to the person accused thereof.' *In practice, however,* Official Reports have sometimes been prepared from the perspective of what fits the preparer's concept of the crime, so they omit information that--though highly relevant and sometimes exculpatory of the defendant charged with the offense--the preparer does not deem "pertinent.". . . [A]ny failure to retain Unofficial Reports creates a serious potential of deprivation of defendants' constitutional rights. Such deprivations have in fact occurred in the past and were the subject of testimony during the hearing."
>
> "[9(b)(c')] In what appear to be a significant number of cases the Unofficial Reports were destroyed, sometimes upon the submission of a closing report, sometimes upon completion of the prosecution and sometimes after appeal."
>
> "[11] As a result of the procedures described in the preceding Findings, not all potentially exculpatory information contained in the various investigative materials is necessarily included in the Official Reports. There has been and is no police rule, regulation, procedure or practice that specifically required all exculpatory information learned in a criminal investigation to be placed in Official Reports and transmitted to Central Records."

Palmer, 562 F.Supp. at 1069-72 (emphasis added).[2]

Given the foregoing, the well-settled street files practice has long been held sufficient to establish Monell liability. See Evans v. City of Chicago, 2006 WL 463041, at *14 (N.D.Ill. Jan.

---

[2] The Seventh Circuit subsequently reversed Palmer in part, but it did so grounds of standing, not on the merits. Palmer v. Chicago, 755 F.2d 560, 571-76 (7th Cir. 1985).

3

6, 2006) ("There is, therefore, little question that maintaining non-disclosed 'street files' was the custom of the City at the time Jones was prosecuted and until Judge Shadur issued a preliminary injunction in the related case of Palmer v. City of Chicago, 562 F.Supp. 1067 (N.D.Ill.1983), despite the City's protestations to the contrary before this court."). In Jones, for example, Judge Posner affirmed a jury verdict on the Monell claim as follows:

> . . .the City, which has abandoned the [Street File] practice, does not challenge the jury's implicit finding that it denied criminal defendants due process of law. Brady v. Maryland does not require the police to keep written records of all their investigatory activities; but attempts to circumvent the rule of that case by retaining records in clandestine files deliberately concealed from prosecutors and defense counsel cannot be tolerated. The City sensibly does not attempt to defend such behavior in this court.

Jones, 856 F.2d at 995. See also Palmer v. Chicago, 562 F.Supp. at 1069-76 (the Department's Street File practices "unquestionably created a grave risk of non-disclosure of exculpatory materials and hence of the violation of constitutional rights. . .").[3]

Turning to Plaintiff's case, even a cursory review of the official file that was provided to the State's Attorney and the criminal defendant reveals enormous gaps and holes. This is no surprise. The Department's street files problem was in full swing during this time period, and the street file for this particular investigation no longer exists. Accordingly, much of the discovery period in this litigation has been and will be devoted to discovering what potentially exculpatory information the Area 2 detectives knew about the murder but did not disclose in the official file and why it was not disclosed.

As should be readily apparent, this is the same inquiry that controls the claims against the individual Defendants. Accordingly, an attempt to bifurcate discovery is inappropriate here.

---

[3] As Judge Leinenweber summarized in denying the City's post-trial motion in Jones:
> The City acknowledges that plaintiff did establish that Area 2 detectives investigating serious crimes created and maintained their own investigative notes and papers and that one internal document, the 'to/from' memo, was routinely not included in documents sent to the Records Department. Notwithstanding this admission the City suggests that there was no evidence that the practice was pursuant to a policy or that it resulted in arrest of suspects without probable cause.
> *After reviewing the trial transcript the court remains convinced that the instant situation presents a very strong example of a Monell policy.* There was uncontradicted evidence that the policy of maintaining street files was approved by the department and used for a long time before it was discovered by plaintiff's counsel. The court also agrees with plaintiff that this policy effectively assured defendants that they could succeed in falsely arresting and prosecuting plaintiff by hiding evidence and omitting reference to official reports. *The court concludes that the jury reasonably found that the policy was the proximate cause of the constitutional violation.*

Jones v. City of Chicago, 1987 WL 16611, at *7 (N.D.Ill. Sept. 1, 1987) (emphasis added).

4

### B. Discovery And Trial Regarding The Street File Claim Cannot Be Efficiently Bifurcated

Given the nature of the claims, street files policy claim against the City cannnot in any meaningful sense be separated out from the claims against the officers. At the officers' depositions, for example, Plaintiff's counsel obviously intends to inquire about the street files, and what was in them. If the City prevails in "bifurcating" the street files inquiry, it will object to this obviously relevant line of questioning -- and anything that comes close. The result will be endless discovery disputes. Bradley v. City of Chicago, No. 09 C 4538, 2010 WL 432313, at *3 (N.D.Ill. Feb. 3, 2010) ("If the court were to grant the motion for bifurcation, the resolution of such discovery disputes and the need of the parties to separate Monell evidence from individual liability evidence will further complicate rather than simplify these proceedings.").

The same overlap will be present at trial. The City erects a strawman, suggesting that trial on the City's liability would "dwarf a shorter trial on the claims against the Police Officer Defendants." Mot. ¶ 2. In reality, much of the same evidence against the City is independently admissible on the underlying claims -- even leaving aside the problems with the notion that marginally "lengthening" a trial is grounds to extinguish a claim. Compare Medina v. City of Chicago, 100 F.Supp. 2d 893, 895 (N.D. Ill. 2000) (cited by City's motion at ¶ 4) (bifurcating Monell claim in the most garden variety excessive force claim imaginable).

For example, the officers on trial will presumably deny that they withheld exculpatory information. Plaintiff is certainly entitled to prove that the prevailing practice was to do just that, *i.e.,* that all of the detectives kept exculpatory evidences in private street files during this time period. See, e.g., Rosenburg v. Lincoln American Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (evidence properly admitted under FRE 406 to show routine practice of insurance agents at defendant company of giving false oral assurances of coverage despite its written conditions to the contrary where plaintiffs had submitted to defendant statements of 29 persons to that effect); Brennan v. Paul Revere Life Ins. Co., No. 00 C 0725, 2002 WL 1284385, at *3-*4 (N.D.Ill. July 10, 2002) (Kennelly, J.) ("A good deal of the evidence Brennan seeks to offer in this regard falls neatly within the scope of Rule 406; he contends that the evidence shows that defendants had a standard practice of targeting for denial or termination certain types of high-value claims (including the type Brennan made) and then coming up with evidence to support a denial."); Commonwealth of Pa. v. Porter, 659 F.2d 306, 320 (3rd Cir. 1981) (evidence of a "pattern or practice of violations of constitutional rights" properly admitted "under Rule 406 to show a

pattern or routine practice of a defendant or organization"); cf. MCI Worldcom Network Services v. Atlas Excavating, Inc., No. 02 C 4234, 2004 WL 784897, *1 (N.D.Ill. April 9, 2004) (Moran, J.) (referring to Rule 406 as permitting "pattern or practice" evidence). The street file issue is thus a legitimate part of the trial either way, and the City's proposal to bifurcate its consideration is pointless. See Robinson v. Village of Matteson, 1999 WL 1270685, at *2 (N.D.Ill. Dec. 23, 1999) ("[T]he dismissal of a claim for relief under §1983 does not mean that all evidence which formed the basis for such a claim is inadmissible [at trial]. I grant motions *in limine* to exclude evidence only if the evidence sought to be excluded is clearly inadmissible for any purpose. Generally, [even without a claim for false arrest], the circumstances surrounding an arrest or detainment are relevant both to whether it was lawful and the damage calculation resulting from an unlawful arrest") (citations omitted).

Moreover, the degree of overlap does not end there. The elements of Plaintiff's claim against command personnel (*e.g.*, Burge) and that of the Monell claim also coincide: to succeed on a claim against the command personnel, Plaintiff will need to establish that the City of Chicago had a custom, policy or practice that led to the violation of his constitutional rights and that the supervisory Defendants knew of the alleged custom, policy or practice and endorsed, condoned and acquiesced in its enforcement. Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

The same is true for the City's policies and training. In addition to being probative of Plaintiff's claims against command personnel, see Rascon, 803 F.3d at 274, that discovery also relates to, among other things, the reasonableness of the officers' actions. Brandon v. Maywood, 179 F. Supp. 2d 847, 853 (N.D. Ill. 2000) ("[E]vidence of training that the defendants actually received prior to the events leading up to this case is relevant to the reasonableness of their actions.")

In short, the fact pattern of this case is such that any attempt to draw a line between the street files policy claim and the claims that the Defendant Officers withheld exculpatory information is necessarily artificial. Bifurcation captures no advantage, and the purported "unfair prejudice" cited by Defendants' motion is actually nonexistent. Compare Ojeda-Beltran, 2008 WL 2782815, at *2-*3 (relied upon and quoted by the City at ¶ 8) (denying bifurcation in a straight-forward excessive force and false arrest case because the policy evidence would not have been admissible on the underlying claims).

6

Nor would the opposite result (non-bifurcation) create any undue burden because, as it turns out, this same subject has already been exhaustively discovered by these same law firms.

### C. Prior Experience In The Evans Litigation Proves That The Street Files Claims Can Be Discovered Efficiently Without Bifurcation

About six years ago, Michael Evans brought a similar lawsuit involving a rape and murder in the mid-1970s. One of the three firms representing the Plaintiff was the same law firm (Loevy & Loevy) that now represents Alton Logan, and the same four defense lawyers from the Dykema firm represented the City, both then and now.

In Evans, the City brought the same motion to bifurcate the same Monell claims, but Judge Coar denied it. See Exhibit A at 4, 6 (8/18/05 transcript of proceedings before Judge Coar). The sky hardly fell in, and discovery of the street files claim proceeded seamlessly in conjunction with the underlying claims.

More to the point, however, the parties have already engaged in discovery necessary to establish *vel non* the existence of the street files practice. In other words, the work is largely already done. All of the written discovery bearing on the old street files practice that still exists was (presumably) discovered in Evans. Those same documents and deposition transcripts have already been identified and produced back to the City in this case in conjunction with Rule 26. The work is done.

Not only has an exhaustive record already been created by the same two law firms over the same policy claim governing the same time period, but Judge Coar denied summary judgment based on what was discovered. Evans, 2006 WL 463041, at *14-*15. The City argued vehemently that no street file practice existed, but Judge Coar found questions of fact.[4]

Recognizing that the incontrovertible evidence contradicts its core position, the City presently attempts to "bifurcate" the street files issue out of the case. This result is untenable for the following reasons.

---

[4] The policy claims never got tried in Evans because on the eve of trial, Plaintiff agreed to dismiss them in exchange for the type of stipulation offered here by the City. As discussed below in the following subsection, Plaintiff made a mistake in that regard: For the reasons discussed in the text *infra,* the City's stipulation proved an inadequate substitute, and Plaintiff would have been much better off had he not voluntarily relinquished the Monell claim.

7

### D. The "Liability Gap" Means That Bifurcation Is Untenable

The City's main premise is that the Monell claim is supposedly moot because the City stands ready to accept judgment against it in the event that Plaintiff obtains a judgment against either Defendant officer. The City's argument fails to withstand scrutiny.

For starters, Plaintiff notes that the City's offer to stipulate gives the Plaintiff exactly nothing which he does not already have. State law (and the union contract) requires the City to indemnify any judgment against any officer. See 745 ILCS 10/9-102 (requiring indemnification of damages awards); see also City of Chicago and F.O.P., Chicago Lodge No. 7 Contract Article 22, available on the web at http://www.aele.org/chicago-fop.html, (requiring indemnification for damages awarded against an officer). The City's "stipulation" thus adds little, if anything at all.

But that is only background. The real problem with the stipulation, explained in the correspondence the City attaches to its motion as Exhibits B-D, is that it creates a liability gap. Plaintiff explains as follows.

If Plaintiff is permitted to proceed with the street files Monell claim, he wins if he can prove both that he suffered a constitutional deprivation, and that it was caused by the City's practice -- no more and no less. See Garcia v. City of Chicago, 2003 WL 1845397, at *3 (N.D.Ill. April 8, 2003). Under those circumstances, Plaintiff need not specify or even identify which police officer did the withholding. As long as he can show that his constitutional rights were in fact violated, and that the City's practices were responsible, he does not have to pinpoint the particular police officer who did the withholding. Thomas v. Cook County Sheriff's Dept., 588 F.3d 445, 455-56 (7th Cir. 2010) (plaintiff need not name specific individuals, much less obtain judgment against them, in order to prevail against the municipal entity on a Monell claim).

Thomas is directly on point. The mother of a pretrial detainee who died in custody alleged that his death was the result of the deliberate indifference of correctional employees of Cook County. Thomas, 588 F.3d at 449. Although employees of Cook County were not found liable during a jury trial on the case, Cook County was held liable for policies and practices pursuant to Monell. Id. at 454. Cook County appealed the jury verdict, contending that because none of its officers were found liable, it could not be found liable. Id. Rejecting that theory, Thomas held that "a municipality can be held liable under Monell, even when its officers are not, unless such a finding would create an inconsistent verdict." Id. at 456; see also Bell v. City of Chicago, No. 09-4537, 2010 WL 432310, at *2 (N.D. Ill. Feb. 3, 2010) ("In Thomas, the Seventh Circuit specifically addressed the holding in Heller and stated that to interpret the holding in

8

Heller to constitute a 'rule that requires individual officer liability before a municipality can ever be held liable for damages under Monell is an unreasonable extension of Heller.'").[5]

This type of claim is especially useful in the context of the present case. There are presently two police officer Defendants, each of whom took the Fifth at their recent depositions and refused to answer any questions. No other police officers have agreed even to schedule their depositions, which were first noticed by Plaintiff two months ago. Once discovery is finally completed, it remains entirely possible in this case that both of the following circumstances will prove true: (a) Plaintiff will be able to establish through witnesses that the investigating Area 2 police detectives knew of exculpatory facts but suppressed them; and (b) Plaintiff will not be able to identify precisely which police officer is responsible for the specific withholding.

If that turns out to be the case, Plaintiff would be unable to obtain a judgment against any particular police officer. The jury might well decide that a Chicago police detective withheld exculpatory information from Plaintiff, but that there was no way to lay that violation at the doorstep of either Defendant Officer. Under those circumstances, Plaintiff would therefore be perfectly justified in turning to the City as the culpable Defendant, because it is the City's own policies and practices (not derivative liability) that caused the injuries, regardless of the fate of the claims against any particular actor. Thomas, 588 F.3d at 455-56. If Plaintiff could prove the existence of a constitutional violation caused by the City itself, Plaintiff could still win. Id.; Jones, 856 F.2d at 995-96 ("There is little doubt that the clandestine character of the street files played a role in Jones's misfortunes. . . As the custom was department-wide and of long standing, the jury was entitled to conclude that it had been consciously approved at the highest policy-making level for decisions involving the police department").

If the City, however, were to succeed in "mooting" the Monell claim out of consideration by forcing the stipulation on the Plaintiff over Plaintiff's objections, the result would create an unjustified gap/hurdle: Plaintiff could only win if he beat a particular Defendant, which is less

---

[5] The City's extended attempt to distinguish Thomas is impossible to follow. Mot. at 7 n.2. The City appears to be arguing that Thomas cannot means what it says because the result would be inconsistent with Treece v. Hochstetler, 213 F. 3d 360 (7th Cir. 2000). In Treece, the policy and practice alleged is not even specified, but the plaintiff lost on her underlying claim at trial against the named individual defendant officer. On appeal, the Seventh Circuit affirmed the dismissal of the City of Naperville on the basis of Heller, and merely affirmed the bifurcation of the case because of the District Court's "considerable discretion" in discovery matters. Id. at 364-65. Nothing about Treece counsels against Thomas's clear language.

9

than he would obtain if the Monell claim proceeded to judgment. The advantages ordinarily associated with prevailing on the Monell claim would be (improperly) unavailable.

This liability gap is not lost on the City. As set forth in the letters between counsel attached to the City's motion, the parties have gone around and around on it, in this and other cases. The City presumably understands Plaintiff's position, but nonetheless offers to "moot" the Monell claim by stipulating to judgment only if Plaintiff obtains a judgment against a particular police officer. For the reasons discussed, this is insufficient.[6]

Plaintiff's letters not only continue to point out the insufficiency of the City's proposal, but offered a compromise: if the City is willing to offer Plaintiff exactly what he would have in the event that he won the Monell claim, Plaintiff would accept. In other words, if the City is willing to stipulate to judgment if Plaintiff can prove a constitutional violation by any agent of the Chicago Police Department (acting pursuant to the City's street files policy and practice) then the Monell claim would be a lot less necessary.

The City, however, persists with its position that it will only stipulate to judgment if Plaintiff can obtain a judgment against an individual officer. That is less than what Plaintiff will obtain if he wins the Monell claim. It is thus unacceptable.

In practical terms, that liability gap shows why bifurcation is highly undesirable. Assume, for example, that the Court accepted the City's proposal and bifurcated the Monell claim. Assume further that the litigation proceeded all the way to trial, and the jury found that neither of the Individual Defendants violated Plaintiff's rights. At that point, the Court would have to start the litigation all over: the trial would not have resolved whether Plaintiff's rights were violated by Chicago Police Officers other than the named Defendants acting pursuant to the City's policies and practices. Because Plaintiff would still be entitled to an adjudication of that claim, bifurcation would have proved to be an unmitigated disaster from an efficiency standpoint. See Bradley, 2010 WL 432313, at *4 ("Further, all of the time and effort that the City proposes will be saved in discovery, trial preparations and trial time is purely speculative. If we were to

---

[6] The City cites no law in support of its position that Thomas cannot mean what it very plainly says, other than Heller and Treece. Mot. at ¶ 12. Plaintiff has already discussed how Treece is mis-cited (see fn. 5 *supra*) and City's reliance on Heller is equally misplaced. Heller held merely that the Monell claim failed because the municipal entity was "sued only because they were thought legally responsible for Bushey's actions." 475 U.S. at 799. That holding says nothing about the fact pattern here, where Plaintiff alleges that his constitutional rights were violated by the City's agents acting per its policy and practice.

10

follow the City's proposed schedule, there might be a need for two rounds of discovery, two trials to prepare for, and two trials that would include much redundant evidence. Such a result would excessively prolong this case and would not serve judicial economy.").[7]

Plaintiff notes that the City will have a Reply brief. If the City declines to unequivocally agree to stipulate to judgment in the event Plaintiff can prove that his constitutional rights were violated by any agent of the Chicago Police Department, then the Monell claim is hardly moot. If the City persists in offering to stipulate to judgment only if Plaintiff can beat one of the specifically named Defendants, then the City is offering Plaintiff nothing beyond what he already has, and its motion should be denied.

### E. If The City Wants To Extinguish The Monell Claim, There Is A Proper Way To Do So

Plaintiff disputes the City's foundational premise that it can simply extinguish the policy claim out of existence. If the City truly wishes to eliminate the case and controversy concerning its policy, and achieve the judicial economy touted in its Motion, then the Federal Rules of Civil Procedure provide the proper avenue to do so: the Rules provide for a party to admit the allegations in its Answer, and the case proceeds with that fact established conclusively in Plaintiff's favor. See Fed. R. Civ. P. ("Rule") 7 & 8. The Federal Rules provide no other method for removing issues from controversy other than by pleading to them.

In fact, the Federal Rules expressly prohibit the sort of *ad hoc* pleading that the City attempts to invent via its waiver. Rule 7 lists the pleadings that may be filed in response to a complaint, and a limited non-admission "waiver" of the sort proffered here is not among the permitted pleadings. The Rule expressly concludes that: "No other pleading shall be allowed."[8]

---

[7] In Evans, defense counsel argued in closing argument that there were dozens of officers involved in the investigation, and that Plaintiff had failed to prove that the named Defendants were responsible for the violations, if any. When Plaintiff attempted to enforce the agreed stipulation, the Court construed it narrowly, a result upheld on appeal because the agreed terms provided only that the City would consent to judgment if Plaintiff prevailed against a named Defendant. Plaintiff's counsel learned from that mistake, and will not repeat it voluntarily here. The only stipulation that truly moots a Monell claim is one that provides for judgment against the City in the event Plaintiff proves a constitutional violation by any agent of the Department, not just named Defendants.

[8] See Rule 7(a) ("There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. *No other pleading shall be allowed*") (emphasis added); Haven v. Polska, 215 F.3d 727, 732 (7th Cir. 2000) (same).

The City's unilateral "stipulation" thus has no legal effect and can not be forced upon an unwilling plaintiff. See, e.g., United States v. Williams, 238 F.3d 871, 875-76 (7th Cir. 2001).

Other, more traditional, ways to eliminate claims from contention are to adjudicate them through a motion to dismiss and/or summary judgment, or perhaps even settlement, either in whole or (along the lines proposed by Plaintiff's letters) in part. Instead, the City is attempting to force a "stipulation" and "waiver" upon Plaintiff, a "stipulation" which admits nothing, denies any wrongdoing, and reserves all rights to itself. There is no legal support for that option.

The City argues last that the Monell claim can be dismissed on the grounds that no further compensatory damages are available. This is an unpersuasive justification to bifurcate the claim out of the litigation. While "[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, [] the importance of assuring its efficacy is only accentuated when the wrongdoer is the institution that has been established to protect the very rights it has transgressed." Owen v. City of Independence, 445 U.S. 622, 650 (1980) ("How 'uniquely amiss' it would be, therefore, if the government itself -- the social organ to which all in our society look for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct -- were permitted to disavow liability for the injury it has begotten. . .").

In Amato v. City of Saratoga Springs, 170 F.3d 311 (2d Cir. 1999), for example, the District Court tried the plaintiff's claims against the individual police officer on a bifurcated basis, reserving for later the plaintiff's policy claim against the City. After the plaintiff obtained only nominal damages in the first trial, the District Court dismissed the municipal policy claim, apparently reasoning that a trial against the City was unnecessary since it could yield no more than the nominal damages already awarded. Id. at 316-17. Citing Carey v. Piphus, 435 U.S. 247, 317 (1978), the Second Circuit reversed, holding that the plaintiff was entitled to pursue a claim under Monell "even in the absence of actual compensable injury." Amato, 170 F.3d at 317. The court explained that a judgment against a municipality can be a catalyst for change, even when such a judgment does not increase the City's monetary exposure:

> The ability to promote an individual official's "scrupulous observance of the Constitution" is important. Perhaps even more important to society, however, is the ability to hold a municipality accountable where official policy or custom has resulted in the deprivation of constitutional rights. A judgment against a municipality not only holds that entity responsible for its actions and inactions, but also can encourage the municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue. In short, a finding against

12

officers in their individual capacities does not serve all the purposes of, and is not the equivalent of, a judgment against the municipality.

Id. at 317-19 (emphasis added).

In sum, these holdings foreclose the City's argument that the Court is "barred" from trying policy and practice claims merely by the City's promise to pay money if the officers lose. Economic recovery is only one aspect of Section 1983, which is why Monell claims continue to exist notwithstanding statutory indemnification.

**III.     Plaintiff's Other Monell Claim (Abusive Investigations) Further Supports The Undesirability Of Bifurcation**

As was also the case in the Evans litigation, Plaintiff in this case brings an equivalent Monell claim arising out the of the now-infamous pattern of alleged abuses in Area 2 under the command of Jon Burge. In a nutshell, Plaintiff alleges that his wrongful conviction was caused by a policy and practice of conducting profoundly flawed investigations, marred by physical and other abuses, such as those that occurred here. See Complaint, ¶¶ 56-62.

As pled in the Complaint, it has now come to light that between 1973 and the late 1980s, homicide detectives in Area 2 had a disturbing penchant for "solving" criminal cases without any regard to the actual guilt or innocence of the suspects, 99% of whom were, like Plaintiff, African American males. The problem was first exposed to public view in 1982, the same year that the McDonald's murder occurred, in Wilson v. Chicago, 6 F.3d 1233, 1235 (7th Cir. 1993). Ironically, that case involved the abuse of a very key witness in the present litigation, Andrew Wilson. Thereafter, the proverbial dam broke, and the Department was forced to re-examine a number of complaints that had previously been rejected one-by-one when considered in isolation from the developing pattern. It became all too apparent that a group of Chicago Police Officers in Areas 2 and 3 engaged in systematic deprivation of due process in order to clear cases more expediently. Id. at 1240 ("[The CPD superintendent] had received many complaints. . . that officers in Area 2. . . were abusing suspects; such abuse was in fact common at Area 2").

A Special Prosecutor has investigated this pattern of abuse. The means employed in framing people included coercive interrogations, physical violence, suppression of exculpatory information, witness manipulation, and the fabrication of physical evidence.

All of these factors are present in this case as well. Plaintiff suspects that however this Court decides the City's request to be let out of the case, the Court is not going make any final determinations now about what evidence is or is not admissible or "barred" at trial. Put simply, there is no record before the Court on which to make such a decision. Plaintiff's point remains

13

that because this Area 2 practice evidence is likely to be introduced in one form or another, bifurcating the City out of the case would not save anyone anything in terms of efficiencies, which is one of the essential premises of the Motion. See Wilson v. Chicago, 6 F.3d 1230 (7th Cir. 1993) (prior acts of police abuse under Burge would be admissible even without the Monell claim to show intent, opportunity, preparation and plan).

Were there any doubt that the evidence bearing on this policy claim overlaps with both the underlying claims (on a Rule 404(b) basis) and the claim against command personnel, there is also Plaintiff's equal protection claim. Equal protection claim premised on the race of the criminal suspects alleging to have been railroaded by Area 2 detectives have survived motions for summary judgment. Evans, 2006 WL 463041, at *17; see also Hobley v. Burge, 2004 WL 2658075, at *13 (N.D.Ill. Oct. 13, 2004) (denying motion to dismiss where "the plaintiff contends that '[o]f all the 100+ examples of Area 2 police torture cases known to date, all of this torture was reserved (with only one exception) exclusively for black suspects, and all of the torturers were white'").

Moreover, because of the similarities between the claim brought here and the one already litigated for the same time period in Evans, discovery on this claim is largely completed as well. Given the comprehensive record that was already created on this very same issue in Evans, there is very little, if any, additional discovery that still needs to be conducted. In fact, Judge Coar found that the discovery already taken was sufficient to overcome summary judgment on this very same Monell claim, and Plaintiff here is content to rely on the same record.[9]

As a final note, as was true with the street files policy, the Court must consider the downside to the City's proposal, namely, the endless disputes that arise when a court tries to carve out some subjects as "Monell"-related and therefore bifurcated. Cadiz v. Kruger, No. 06 C 5463, 2007 WL 4293976, at *7 (N.D.Ill. Nov. 29, 2007) ("Deferring discovery of the Monell claim is unlikely to eliminate any discovery disputes. Rather, in the short term, bifurcation more likely will shift the locus of discovery disputes from the appropriate scope of Monell discovery to whether discovery sought by plaintiff is permissible discovery into the individual claims or impermissible Monell discovery.").

---

[9] In Evans, the City argued unsuccessfully that the Burge-era pattern of abuses did not apply because Mr. Evans had not himself been tortured. This was rejected as a grounds for bifurcation.

14

For example, should the Court grant the City's motion to bifurcate this policy claim, the lawyers for the Defendants will object to all discovery questions bearing on other abuses in other cases in Area 2, arguing that the Court has "bifurcated the policy claim." The problem is that there is no clear line to be drawn. Abuses by police officers in other investigations should be fair game for discovery relating to the underyling claims (see Wilson, *supra*), so the same discovery questions that the defense lawyers will try to characterize as "policy-related" will be viewed by Plaintiff as related to the non-policy claims. Because of the artificiality of any attempt to draw a distinction, the resulting disputes have proven to be intractable in practice.

For example, Judge Brown accepted the City's invitation to try to bifurcate the policy claims in Hobley v. Burge, Case No. 03 C 3678, yet another wrongful conviction case litigated between the same sets of lawyers involved in the present case. Following an explosion of objections that plaintiff's discovery requests related to the "policy" claims, Judge Brown proceeded to spend an inordinate amount of time trying to decide discovery disputes about which side of the line certain requests fell. The result was a ridiculous waste of time for everyone involved, but especially the court. Those disputes will "further complicate rather than simplify these proceedings." Bradley, 2010 WL 432313, at *3 ("Before even a ruling by the court on the motion for bifurcation, there are already discovery disputes brewing on the horizon that will be caused by bifurcation.").

If the prior Hobley experience proved anything, it is that Judge Coar's decision not to bifurcate this claim was the wiser course. In Evans, this policy claim was not bifurcated, and there were no problems. Indeed, because of that litigation, discovery on the claim is largely complete. Bifurcation here would only invite unnecessary problems and disputes.

**Conclusion**

For the foregoing reasons, the policy claims against the City should not be "bifurcated" out of the case. If the City desires to reach a mutually-acceptable stipulation that covers the liabilty gap and provides Plaintiff as much as he would have if he wins the Monell claim (namely, a judgment against the City regardless of whether the named Defendants are ultimately held directly responsible for any constitutional injuries proven at trial), then Plaintiff remains interested in negotiation along those lines. But short of that, there are no legal grounds for the Court to simply extinguish the claim.

          Respectfully submitted,


          <u>S/Jon Loevy</u>
          Attorney for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
Tara Thompson
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

      I, Russell Ainsworth, an attorney, certify that on April 12, 2010, I delivered by electronic means a copy of the attached Response to all counsel of record.


          <u>S/Russell Ainsworth</u>