IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ALTON LOGAN,                              )
                                          )
    Plaintiff,                        )
                                          )
    v.                                )    Case No. 09 C 5471
                                          )
JON BURGE et al.,                         )    Judge Bucklo
                                          )
    Defendants.                       )

## PLAINTIFF'S RESPONSE TO
## ADDITIONAL DEFENDANTS' MOTION TO DISMISS

Plaintiff, ALTON LOGAN, by his counsel, LOEVY & LOEVY, respectfully responds to additional Defendants' motion to dismiss as follows.

### Introduction

In 1983, Plaintiff Alton Logan was convicted of a brutal murder that he did not commit. This wrongful conviction was the result of misconduct by the Defendants, who conspired to build a false case against him irrespective of his guilt or innocence. *See* Amend. Compl. ¶ 1. Plaintiff served 26 years of wrongful imprisonment before he was ultimately exonerated by physical evidence and eyewitness testimony, the results of which proved he was not the murderer. *Id.* ¶ 2.

On January 11, 1982, Alvin Thompson, an off-duty Cook County Sheriff's Officer, and Lloyd Wickliffe, an off-duty sergeant with the Cook County Department of Corrections, were working as security guards at a McDonald's restaurant in Chicago when they were shot by Edgar Hope and Andrew Wilson. *Id.* ¶¶ 10-15. Wickliffe died, but Thompson lived. *Id.*

There was never any physical evidence tying plaintiff to this crime. None of his fingerprints or DNA were found at the crime scene, nor was any incriminating evidence of any kind ever discovered in his possession. *Id.* ¶ 16. In fact, the only physical evidence found in this case exclusively implicated Hope and Wilson. *Id.* ¶ 17.

Several weeks after the shooting, Hope killed a Chicago Police Officer on a CTA bus in Chicago with the gun that he had stolen from Thompson. *Id.* ¶ 18. Additionally, the Chicago Police Department found incriminating evidence linking Wilson to the McDonald's murder when they retrieved the shotgun used by Wilson to kill Wickliffe in a beauty shop where Wilson was known to stay. *Id.* ¶ 19.

Shortly before his death, Wilson provided sworn testimony revealing facts never before known to Plaintiff or his attorneys at the time of his criminal trial. *Id.* ¶ 20. Less than a week after Plaintiff was arrested for murder in this case, Wilson and his brother murdered two other police officers on the south side of Chicago. *Id.* Defendant Burge was the arresting officer of Wilson for the murder of these officers. At the time of his arrest, Wilson was in possession of the .38 caliber gun he had stolen from Wickliffe before killing him. *Id.* Burge seized the McDonald's murder weapon from Wilson. *Id.* ¶ 21. Burge, however, failed to disclose this exculpatory evidence while Plaintiff lost 26 years of his life. *Id.*

**Plaintiff Is Falsely Singled Out**

Wilson was never charged with, or prosecuted for this crime. Instead, rather than continue to perform the police work necessary to properly solve the crime, the Defendants conspired among themselves and with others to shortcut the process. *Id.* ¶ 22. Specifically, Defendants unjustly singled out the Plaintiff, who had already been accused of the crime, and

2

then endeavored to stretch and manipulate the facts and the evidence to fit his supposed guilt. *Id.*

Thomas Bennett, a licensed attorney and former Chicago Police Department Detective, has disclosed under oath that Defendant Burge openly bragged about Plaintiff being wrongfully convicted and that the real murderer was Wilson. *Id.* ¶ 23. Defendant Burge had access to exculpatory evidence that would have prevented Plaintiff from being wrongfully deprived of twenty-six years of his life in prison. *Id.* Not only did Defendant Burge withhold such information from Plaintiff and the court, but he boasted about doing so. *Id.*

In that regard, the defendants manufactured "evidence" that falsely implicated Plaintiff. *Id.* ¶ 24. This fabrication of evidence included, but was not limited to, unlawfully manipulating witnesses, namely Antoinette Dawson and Charles Trent, to falsely implicate Plaintiff by means of improper suggestiveness and outright coercion, all of which violated Plaintiff's rights. *Id.* Both Dawson and Trent have signed affidavits attesting to police this manipulation. *Id.*

The Defendants also disregarded and/or destroyed exculpatory evidence, to wit, police reports, notes, and statements that should have been preserved along with the rest of the Chicago Police Department's files, but were not. *Id.* ¶ 25. This includes the missing set of street files and police reports dealing with events that have never been disclosed to Plaintiff or his attorneys. *Id.*

For example, Defendants held a line-up that took place at Cook County Jail. The fact of this lineup was never documented in any police reports turned over to Plaintiff or his defense team. Had it been disclosed, it would have been exculpatory. *Id.* ¶ 26. The Defendants also deliberately and affirmatively failed to disclose information pertaining to investigations that established the guilt of individuals other than Plaintiff. Consistent with that endeavor, Defendants unlawfully suppressed information that would have implicated others and thereby

exonerated Plaintiff. *Id.* ¶ 27. The Defendants also withheld from the prosecutors and from plaintiff other evidence that was both exculpatory and material. This unconstitutional conduct included, but was not limited to, withholding knowledge of the existence of monetary considerations made to key witness(es) in this and related cases, the circumstances of which would have been exculpatory. *Id.* ¶ 28.

### Plaintiff's Exoneration

Throughout his incarceration, Plaintiff pleaded with the judicial system to hear evidence concerning his innocence and Wilson's guilt. *Id.* ¶ 35.

Wilson died in 2008. Directly thereafter, Dale Coventry and Jameson Kunz, Wilson's former attorneys from the Cook County Public Defender's Office, disclosed to the court that they had an affidavit pertaining to Plaintiff's innocence and Wilson's guilt in this case. *Id.* ¶ 36. Despite knowing the truth about who really committed this crime, these lawyers were duty-bound to stand by silently, even as Plaintiff fruitlessly pressed his claims of innocence over the years in the courts. *Id.* ¶ 37.

Upon Wilson's death, attorneys Coventry and Kunz came forward. After a lengthy evidentiary hearing, Plaintiff's conviction was overturned. Plaintiff was subsequently fully exonerated when he was granted a Certificate of Innocence last year. *Id.* ¶ 38.

### I.          Standard of Review

Motions to dismiss are construed in the light most favorable to the plaintiff. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). The Court must take as true all well-pleaded factual allegations and make all possible inferences from those allegations in the Plaintiff's favor. *Id.* Conclusory allegations suffice "so long as facts are pled that put the defendants on proper

4

notice of the alleged wrongdoing." *Diaz v. Hart*, No. 08 C 5621, 2010 WL 849654, at *7 (N.D. Ill. March 8, 2010). "To satisfy the notice pleading requirements of Fed.R.Civ.P. 8(a)(2), the plaintiff need only state his basic legal claim and provide 'some indication ... of time and place.'" *Gray v. Taylor*, 2010 WL 2178807, at *1 (N.D. Ill. May 28, 2010) (Bucklo, J.) quoting *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir.2004).

**II.      Plaintiff's Amended Complaint Notifies Defendants of His Claims, Which is All That Is Required By the Federal Rules**

Plaintiff's allegations against Defendants more than surpass *Iqbal*'s "plausibility" test and, if true, easily state a claim against all Defendants for the violation of Plaintiff's constitutional rights.

**A.      Plaintiff's Amended Complaint States a Claim Against Defendants**

To begin, the amended complaint spells out the ways that Defendants violated Plaintiff's constitutional rights. For example, Plaintiff alleges the Defendants "unlawfully manipulating witnesses, namely Anthonette Dawson and Charles Trent, to falsely implicate Plaintiff by means of improper suggestiveness and outright coercion." Am. Comp. ¶24. Plaintiff further alleged that "[t]he Defendants also disregarded and/or destroyed exculpatory evidence, to wit, police reports, notes, and statements that should have been preserved along with the rest of the Chicago Police Department's files, but were not." *Id.* ¶25. Plaintiff specified that the withheld exculpatory evidence included reports about an exculpatory line-up that took place at Cook County Jail; evidence that persons other than Plaintiff were the true perpetrators of the McDonald's murder; and reports regarding monetary considerations that were paid to witnesses but not otherwise disclosed. *Id.* ¶¶26-28.

### B.    Plaintiff's Complaint Provides Fair Notice to All Defendants

Defendants argue that the amended complaint fails because the allegations are made against all of the individual defendants, without parsing out the specific roles that each Defendant played in violating Plaintiff's constitutional rights.  That argument is baseless.

There is nothing *per se* improper about directing allegations against a number of Defendants, where the Defendants are accused of the same misconduct.  The Seventh Circuit has long held that notice pleading does not require fact-specific elucidation of each Defendant's malfeasance.  *See Palmer v. Board of Educ. of Community Unit School Dist. 201-U, Will County, Ill.*, 46 F.3d 682, 688 (7th Cir. 1995) ("The district court dismissed the complaint to the extent it sought relief from the nine individual defendants, observing that '[t]he complaint does not ... say of any defendant, as an individual, that he or she has done something.'  Nor did it need to.  Complaints need not plead facts.").  That fact-pleading level of specificity is not required.  *See McDonald v. Village of Winnetka*, 2001 WL 477148, at *5 (N.D. Ill. May 3, 2001) ("McDonald has pleaded sufficient details of the alleged wrong doing by the three named defendants to place the defendants on notice of the allegations and the details of each defendant's actions can be clarified at later steps in the litigation"); *Garibay v. City of Chicago Police Officers*, 1997 WL 211225, at *2 (N.D. Ill., April 18, 1997) (rejecting argument that plaintiff cannot direct counts against all defendants).

Unsurprisingly, courts in this district have repeatedly rejected attempts to dismiss similar complaints.  *See Hill v. City of Chicago*, No. 06-6772, 2007 WL 1424211, at *8 (N.D. Ill. May 10, 2007) (rejecting motion to dismiss for failure to "establish each individual defendants' personal involvement" holding that "under the federal notice pleading standards complaints need

not set forth factual narratives"); *McDorman v. Smith*, 437 F. Supp. 2d 768, 779-80 (N.D. Ill.

2006) (rejecting argument that the "lumping" of allegations against defendants justified a more

definite statement); *Patterson v. Burge*, 328 F.Supp.2d 878, 888 (N.D. Ill. 2004) ("Federal notice

pleading rules do not require Patterson to provide detailed explanations of how each particular

defendant caused each of his injuries. The court believes the allegations in Patterson's complaint

are more than adequate to put this court and defendants Byrne, Martin, Shines, Hillard and

Needham on notice of the claims against them."); *Varvaris v. Delia*, 1996 WL 521287, at *2

(N.D. Ill. Sept. 11, 1996) (holding that complaint need not detail the specific acts performed by

each officer because "the complaint effectively puts the officers on notice of the general claims

against them and the circumstances from which they arise."); *Duarte v. City of Chicago*, No.

90-181, 1990 WL 165302, at *1 (N.D. Ill. Oct. 25, 1990) (similar motion to dismiss denied

because "[I]t is unreasonable to expect more specific allegations until the parties have conducted

discovery.").[1]

---

[1] Defendants also complain that Plaintiff's failure to demand separate relief for each of his counts dooms his complaint. Motion at 4. Defendants' only case cited in support, Gregory v. TCF Bank, a case brought pro se against several judges, Clerk of Court Dorothy Brown, and a bank, is not germane, and certainly does not stand for the proposition that a federal complaint should be dismissed for not including separate prayers for relief. In fact, by parsing his legal claims in separate counts, Plaintiff is giving Defendants more than they are entitled to. "Although it is common to draft complaints with multiple counts . . . nothing in the Rules of Civil Procedure requires this. To the contrary, the [R]ules discourage it. Complaints should be short and simple, giving the adversary notice while leaving the rest to further documents." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (rejecting the argument that complaints must plead legal theories in addition to facts) (Easterbrook, J.); *see also Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006) ("In federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories."); *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("A complaint should limn the grievance and demand relief. It need not identify the law on which the claim rests, and different legal theories therefore do not multiply the number of claims for relief.").

Each Defendant is more than able to simply admit or deny each of the specific categories of allegations consistent with the particular defendant's view of the truth. *See Trustees of the Auto. Mechanics' Industry Welfare and Pension Funds Local 701 v. Elmhurst Lincoln Mercury*, 677 F.Supp.2d 1053, 1056 (N.D.Ill.,2010) (Bucklo, J.) ("Courts typically afford plaintiffs greater latitude and require less specificity where" the complaint relates to matters within the defendants' knowledge). Were there any doubt, the fact that all defendants have easily identified the claims asserted against them puts to bed any notion that the complaint fails to put them on notice. *See Gardunio v. Town of Cicero*, 674 F.Supp.2d 976, 984 (N.D. Ill. 2009) ("the complaint is sufficiently clear to apprise Defendants of the claims against them, as evidenced by the fact that Defendants in fact responded to each of the claims in their motion to dismiss.").[2]

Defendants next complain that Plaintiff's failure to intervene count should be dismissed because it alleges that one or more of the Defendants failed to intervene. Motion at 5. There is nothing objectionable about pleading in this manner whatsoever. Defendants' reliance on *Smith v. Village of Dolton*, 2010 WL 744313 (N.D. Ill. Feb. 25, 2010) is misplaced. In *Smith*, the plaintiff alleged that three named defendants were present for his false arrest, but claimed that Defendant OFFICERS [sic]" failed to intervene to prevent the constitutional violation, without defining "Defendant OFFICERS." *Id.* at *2. Accordingly, the Court interpreted the failure to intervene claim as being alleged only against those three Defendants who were alleged to be

---

[2] Defendants' argument that Plaintiff's pleading "is utterly deceptive" and "designed to trap" them into making admissions against their interest is nonsensical. Motion at 4. The Defendants are free to admit or deny the allegations against them. Nothing in the amended complaint upends the Federal Rules of Civil Procedure. *See* Rule 8(b)(1)(B) (a defendant need only "admit or deny the allegations asserted against it by an opposing party"); Rule 8(b)(4) (a defendant may admit part and deny part of an allegation); Rule 8(b)(5) (a defendant may assert lack of knowledge in response to an allegation).

present at the location of denied the motion to dismiss the failure to intervene claim. *Id.*

Nothing in *Smith* holds that a plaintiff cannot allege that "one or more" of the defendants committed misconduct. Indeed, "[i]f the complaint cannot survive a motion under Rule 12(b)(6) until each person's role is known, however, it may be impossible as a practical matter to obtain complete relief." *Palmer*, 46 F.3d at 688. The Defendants can certainly answer whether or not they failed to intervene.

Defendants finally cite a number of cases for the non-controversial proposition that §1983 does not support claims for vicarious liability. Motion at 5-6. But Plaintiff is not attempting to hold Defendants responsible for what others have done; rather, Plaintiff alleges that each of them were personally responsible for causing his twenty-six years of wrongful incarceration.

<div align="center">***</div>

In sum, the parties have widely divergent views of the facts of this case. Defendants are free to explore those differences in discovery. Factual disputes, however, cannot form the basis for dismissal of a complaint.

## III. Plaintiff's Due Process Claim is Entirely Proper

Defendants rehash the City's losing argument that Plaintiff cannot maintain a due process claim predicated on Defendants' fabrication of evidence. Motion at 7-8; Dckt. No. 87 (denying City's attempt to strike Plaintiff's due process claims predicated on the fabrication of evidence). That argument has not improved with age.

As an initial matter, there is no dispute as a threshold matter that Plaintiff's due process count states a legal claim. The Defendants' motion does not contest that a person who has been framed for murder can pursue Section 1983 redress for an alleged violation of his right to due process. Such a claim has long been recognized in this Circuit, and elsewhere. *See, e.g.,*

<div align="center">9</div>

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001) (§ 1983 claims have always existed where a police officer's actions deny the due process rights to a fair trial).

This type of due process violation is established by showing that the defendants' conduct rendered the plaintiff's criminal trial unfair. That can be accomplished in any of a number of ways, some of which have been pled here. For instance, plaintiff can pursue a due process claim where defendants withhold exculpatory evidence. *Manning v. Miller*, 355 F.3d 1028, 1032-34 (7th Cir. 2004) ("Through his Brady claim, Manning has alleged a violation of a constitutional right, specifically, his due process right to a fair trial"). Due process is also violated where defendants manipulate witness identifications. *Newsome*, 256 F.3d at 749-53 (describing this as a "due process claim in the original sense of that phrase--[plaintiff] did not receive a fair trial [if state actors] withheld material exculpatory details"). Additionally, due process is also violated through unduly suggestive identification procedures. *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006) (the Constitution "guarantees the right to a fair trial -- in this context, via the due process clause of the Fourteenth Amendment -- and that right is violated if unduly suggestive identification techniques are allowed to taint the trial").

Specifically, it has long been the law that due process is violated where a conviction is obtained through falsified evidence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Mooney v. Holohan*, 294 U.S.103, 110-12 (1935). This elemental principle of due process law remains as incontrovertible as ever. *See e.g., Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (use of false evidence to obtain a conviction violates due process). Based on this principle, the Seventh Circuit has long recognized a Section 1983 claim built upon police fabrications of bogus evidence, dating at least as far back as *Jones v. Chicago*, 856F.2d 985 (7th Cir. 1988). *See Newsome*, 256 F.3d at 752-53 ("If Newsome can prove what he alleges, then under... *Jones v.*

10

*Chicago*, he will establish a violation of the due process clause"); *cf. Tully v. Barada*, 599 F.3d 591, 595 (7th Cir. 2010) (recognizing §1983 actions based on convictions procured by "fabricating evidence, withholding exculpatory evidence, tampering with witnesses, or committing any other independent constitutional violation").

Seeking to manufacture an issue, Defendants cite two cases, neither of which controls here. Both *McCann v. Mangialardi*, 337 F.3d 782 (7th Cir. 2003) and *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009) involved fact patterns where there was no criminal trial at all, and thus no potential due process violation. The thrust of both *McCann* and *Brooks* is that a Fourth Amendment false arrest claim cannot be repackaged as a due process claim if there has been no due process violation at a criminal trial. Put another way, the mere inconvenience of being subject to a criminal prosecution is not enough to support a due process violation where there has been no showing that any criminal trial was rendered unfair. *McCann*, 337 F.3d at 786 ("Aside from the fact that he did not have a trial, McCann waived this argument by failing to present it to the district court for its consideration"); *Brooks*, 564 F.3d at 832 (rejecting due process claim in two short paragraphs in a case without a criminal trial).

Plaintiff here is not trying to recast a fourth amendment claim as a due process violation; rather, he complains that he was deprived of his right to a fair trial (in part) by the Defendants' undisclosed manipulation of witnesses and withholding of exculpatory evidence that would have prevented his wrongful conviction.

Defendants also rely upon *Harris v. Kuba*, 486 F.3d 1010 (7th Cir. 2007), but in doing so they evince a misunderstanding of the law. In *Harris*, the plaintiff complained that the defendant officer fabricated an account that Harris knew the true perpetrator of a crime when he did not. *Id.* at 1016-17. The Seventh Circuit concluded that no *Brady* violation occurred because nothing he

11

did not already know was withheld from him – that is, the fact that Harris did not actually know the true perpetrator. *Id.* at 1017.

The genesis for that conclusion came from the Seventh Circuit's opinion in *Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003), where the court held that false police reports about Gauger's coerced confession could not form the basis for a *Brady* claim because Gauger knew as well as anyone the circumstances of his coerced confession and thus nothing was withheld from him. *Id.* at 360; see Harris. Basically, all *Gauger* stands for is that a criminal defendant cannot complain about information being withheld from him if he already knows the information.

In contrast, where a police officer impermissibly manipulates a witness to falsely inculpate a criminal suspect and hides the means used to manipulate the witness (e.g., by filing a false police report) §1983 liability lies. *Newsome*, 256 F.3d at 752. That is exactly the same theory of liability that Plaintiff claims here. *See* Am. Comp. ¶¶24-28.

**IV.      Because Plaintiff's Underlying Federal Claims Survive, So Does His Section 1983 Conspiracy Claim**

Defendants contend that because Plaintiff's §1983 conspiracy claim is derivative of his other federal claims, the dismissal of his other federal claims requires dismissal of his federal conspiracy claim. As discussed above, because Plaintiff's federal claims survive, so does his conspiracy claim.

**Conclusion**

Defendants' Motion is a baseless attempt to delay finally answering for their actions in causing Plaintiff's twenty-six years of wrongful incarceration. Far from being some complicated plot to supposedly induce any of the Defendants to plead the Fifth, Plaintiff's amended complaint

12

is the only avenue he has to hold Defendants responsible for the twenty-six years of his life that they took from him.  It is time for Defendants to answer the allegations and proceed with discovery in this case.

<div style="margin-left:40%;">

Respectfully submitted,
/s/ Russell Ainsworth
Attorneys for Plaintiff

</div>

Arthur Loevy
Jon Loevy
Mike Kanovitz
Russell Ainsworth
Tara Thompson
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

I, Russell Ainsworth, an attorney, certify that on August 10, 2010, I delivered by electronic means a copy of the attached Response to all counsel of record.

/s/ Russell Ainsworth

13