# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5471 | **DATE** | 10/6/2010 |
| **CASE TITLE** | Logan vs. Burge, et al. | | |

**DOCKET ENTRY TEXT**

Defendants' motion for sanctions and to dismiss (135) is denied.

■ [ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

     The deposition of Tony Logan, the 55 year old brother of the plaintiff in this case, began at 10:00 a.m. on August 23, 2010. Present at the deposition were one of plaintiff's attorneys, Russell Ainsworth, plaintiff, and four defense attorneys and a summer associate of one of them. Attorney Daniel Noland asked deponent Logan questions for 139 transcript pages (the record does not reflect how many hours this consumed). Plaintiff's attorney Ainsworth then asked the deponent questions that take up six pages of the transcript. At that point another defense attorney, Shneur Nathan, began asking the deponent more questions. Shortly into his questioning, attorney Nathan began asking the deponent for the telephone numbers of persons he had mentioned who were his friends in the early 1980's. The deponent did not refuse to provide them but did ask Nathan why he wanted the telephone numbers. Logan answered Nathan's questions about where each of the friends lived, at least when Logan had last had contact with them. Nathan asked the deponent other questions, such as whether he cared that his brother had committed a robbery at some point before 1982, which clearly flustered the deponent, and asked the deponent to redescribe persons, whom he had already described in answer to Noland's questions, at a police station in 1982. At some point, Ainsworth began objecting to the questions as asked and answered (I note that defendants' attorneys had made the same objection to questions asked by Ainsworth). Deponent Logan said that he had answered some of the questions earlier, and asked attorney Nathan whether he was going to keep asking the same questions over and over again. Attorney Ainsworth began objecting to questions as harassing as well as repetitious. The deponent, obviously worn out, picked up on the objections and said he would not answer the same question again. Attorney Nathan returned to the issue of telephone numbers, which witness Logan had said he was not refusing to provide but wanted to know why he was being asked for the numbers before he gave them. Nathan's earlier response had been that he was asking the questions, he was not there to answer questions, that he was interpreting deponent's statement as a refusal to answer the questions, and that deponent should

| STATEMENT |
|---|

feel free to provide the information at any time before the end of the deposition. In his return to the subject, Nathan asked deponent who had the "code" that said he did not give out friends' telephone numbers. He asked who operates under this code. At that point, the witness stated that he was not answering more questions put by Nathan.

Plaintiff, Alton Logan, presumably upset by the fact that his brother, the deponent, had become upset, then got up, made a cutting gesture across his own throat and pointed at attorney Nathan, at which time he left the deposition. When Nathan put on the record that he felt he had just been threatened, the deponent attempted to explain that that was not the case, that his brother was simply signaling that was the end of the deposition. After an off the record consultation by defense counsel, defense counsel then stated that plaintiff had formed his fingers in the form of a gun. The deposition ended.

The defendants' attorneys have filed affidavits regarding the hand gestures. It is undisputed that plaintiff did not actually say anything to them, and that he left the deposition.

Defendants ask me to dismiss the lawsuit because of plaintiff's conduct. I decline to do so. Obviously, plaintiff's gesture was improper, or if he was simply trying to signal the end of the deposition as far as he was concerned, unwise. The fact that plaintiff immediately left the premises and did not actually say anything must, however, be taken into account in determining both whether the alleged threat was serious, and how seriously defendants' attorneys should have taken it to be. As any experienced attorney knows, people, often attorneys, sometimes become quite upset during depositions. This deposition had gone on for a long time. Attorney Nathan, if he did not intentionally try to upset the deponent, surely knew that some of his questions, and his statements to the deponent, were likely to upset an already tired witness. Plaintiff's attorney Ainsworth was also at fault: his statements about harassment and repetitious questions could only exacerbate the situation. Reasonable attorneys would have concluded before the deposition got out of hand that it should be concluded on another day. Reasonable attorneys would also have either explained to the deponent why the telephone numbers were needed or simply let the subject go and obtained them later.

The cases cited by defendants in support of their motion involve much more egregious conduct than occurred here. In <u>Waivo v. Board of Trustees</u>, 2008 WL 3929722 (7th Cir. 2008)(unpublished opinion), the Seventh Circuit affirmed dismissal of a lawsuit as a sanction where the plaintiff had abused the court process by filing hundreds of frivolous motions, threatening to kill an opposing lawyer, trying to physically restrain him, verbally harassing him in courthouse hallways, accusing attorneys of having a sexual relationship, and accusing the lawyers in court documents with killing her baby. The plaintiff in <u>Kalwasinski v. Ryan</u>, 2007 WL 2743434 (W.D.N.Y. 2007), wrote a letter to his appointed counsel in which he said his associates were going to murder two defendants and their families.