# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5471 | **DATE** | 10/12/2010 |
| **CASE TITLE** | Logan vs. Burge et al | | |

**DOCKET ENTRY TEXT**

Defendant City of Chicago's Motion to Compel [108] is granted in part and denied in part. Plaintiff is to submit supplemental Rule 26(a)(1) disclosures by 10/25/10. Plaintiff is also reminded of his obligation to continue to supplement his interrogatory responses as discovery proceeds. For more detail, see below.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

In 1983, Plaintiff Alton Logan ("Plaintiff") was prosecuted and convicted of the murder of Lloyd Wycliffe, an off-duty sergeant with the Cook County Department of Corrections. Plaintiff was arrested and interrogated by officers of the Chicago Police Department at Area 2 police headquarters. After serving twenty-six years in prison, Plaintiff was exonerated by physical evidence and eyewitness testimony, and obtained a Certificate of Innocence in 2009. He subsequently filed this lawsuit against a number of officers of the Chicago Police Department, as well as the City of Chicago ("the City"), alleging misconduct in connection with his wrongful conviction. The Complaint includes two Monell claims against the City. Plaintiff alleges that at the time of his conviction, there was a widespread practice of withholding exculpatory information from criminal defendants in so-called "street files," and that the City employed a policy and practice of pursuing and securing false convictions through profoundly flawed investigations.

The City has filed a motion to compel, requesting that the Court order the plaintiff to provide more detailed responses to seventeen out of the eighteen interrogatories the City has served on Plaintiff. Each of these interrogatories relates to Plaintiff's Monell claims, and the City argues that it is entitled to specific information supporting each of Plaintiff's allegations. In response, Plaintiff argues that the City's motion to compel is premature at this stage in the litigation. Plaintiff argues he has answered the City's interrogatories to the best of his ability at this point, and that without more discovery, he cannot provide the City with any more information with respect to these allegations. Plaintiff notes that he has attempted to obtain some of the information at issue through the depositions of a number of city employees, but these employees have refused to answer questions about their involvement out of fear of criminal liability, and have instead invoked their right to silence under the Fifth Amendment. Plaintiff states that he intends to obtain additional information as discovery proceeds and he will supplement his responses accordingly.

# STATEMENT

The City also objects to the form of Plaintiff's Rule 26(a)(1) disclosures. We address Plaintiff's answers to the City's interrogatories as well as Plaintiff's Rule 26(a)(1) disclosures below.

Interrogatory No. 2

Interrogatories Nos. 2 through 17 ask Plaintiff to state with specificity the factual basis for the Monell allegations in the Complaint. We begin our analysis with Interrogatory No. 2, which states:

> State with specificity the factual basis for your contention in [Paragraph] 42 of your Complaint that the unconstitutional withholding of exculpatory information from Plaintiff's defense in this case, as well as the subsequent destruction of some of the same, was all undertaken pursuant to, and proximately caused by, policies and practices on the part of the Chicago Police Department, and identify any specific incidents, witnesses, documents, and statements supporting your contention in 42.

In his response to Interrogatory No. 2, Plaintiff describes in great detail the policies and practices of the Chicago Police Department for keeping files, memoranda, and interview and investigation notes during the relevant time period. In particular, Plaintiff cites to the testimony of Frank Laverty, that "it was the policy and practice of homicide detectives to keep certain exculpatory materials (including notes, Memos, and other documentation relating to ongoing investigations) away from the Official File which was produced to criminal defendants in discovery." Plaintiff describes the common practice in prolonged investigations for detectives to keep "unit" and/or "street files," which were separate from Official Files. Only Official Files were submitted to defense counsel in response to a subpoena; memoranda, reports and other documents that were maintained in unit or street files were not disclosed to defense counsel and were subsequently destroyed. Plaintiff also cites Mr. Laverty's testimony to state that "it was standard practice for some investigators and supervisors in Area 2 to exclude from the official reports all aspects of the investigation that were inconsistent with the main story line of the investigation," i.e., omitting evidence that contradicted key witnesses, showed a lack of credibility or established that their testimony was false or coerced.

In addition, in his response to Interrogatory No. 2, Plaintiff cites to the findings of fact made by Judge Shadur in Palmer v. City of Chicago, 562 F. Supp. 1067, 1069 (N.D. Ill. 1983), regarding file keeping at the Chicago Police Department during the relevant time period, as well as the deposition testimony of seven detectives in Evans v. Chicago, which also corroborates Mr. Laverty's testimony. According to the testimony of these detectives, Plaintiff explains, during the relevant time period, there were no guidelines, training or protocol regarding what information detectives should keep in official police reports or how detectives should collect information to respond to a subpoena from a criminal defendant.

Plaintiff also states in his response to Interrogatory No. 2 that in 1973, the Chicago Police Department disseminated a Training Bulletin regarding case report preparation. The Training Bulletin was in response to an Illinois Supreme Court revision to discovery rules permitting a defense attorney to impeach witnesses and police officers with police reports. The Training Bulletin advised that "to assist the State in its prosecution ... reporting officers are to eliminate their

conclusions, opinions, feelings and evaluations of witnesses and facts from the narrative portion of the original case report." According to Mr. Laverty and another witness, this Training Bulletin caused detectives to omit certain notes and memos from the official file produced to a criminal defendant.

The City argues that Plaintiff's response to Interrogatory No. 2 is insufficient because Plaintiff has failed to specifically identify what, if any, exculpatory and impeaching information was withheld from Plaintiff's criminal defense team. The City also objects to this response because Plaintiff has failed to specifically identify other incidents where exculpatory information was withheld from a criminal defendant. The City argues that Plaintiff should have this information and if he cannot provide a more complete response to this interrogatory, "Plaintiff had no basis to file this lawsuit."

Plaintiff asserts that the City is ignoring the "exhaustive information" Plaintiff has provided in response to Interrogatory No. 2. Plaintiff argues that his response is sufficient because he has "specifically detailed information pertaining to his claim that exculpatory information was withheld from him pursuant to a City policy or practice," and that he has identified all witness and documents that he has knowledge of at this time. Plaintiff states that he "will supplement his responses when he learns more information in discovery, but [he] should not have to produce additional information he does not possess now."

We agree with Plaintiff that his response to Interrogatory No. 2 is sufficient. Although he has not stated specifically what information was withheld from his Official File, he has provided great detail about a widespread practice of omitting highly relevant information from a criminal defendant's official file, hiding this information in so-called street files and subsequently destroying it. Plaintiff has also described a lack of appropriate supervision or training regarding file keeping and a practice of excluding relevant information that contradicted "the main story line of the investigation." Plaintiff's response includes a number of witnesses who will testify to these practices and policies and Plaintiff has provided the City with specific documents on which he intends to rely. At this stage in the litigation, it is not unreasonable for Plaintiff to need additional time and discovery to obtain the more specific information sought in Interrogatory No. 2.

Interrogatories Nos. 3 through 10

In Interrogatories Nos. 3 through 10, the City asks Plaintiff to state with specificity the factual basis for his contentions in Paragraphs 43 through 50 of the Complaint. In response to these interrogatories, Plaintiff states: "See Plaintiff's Response to Interrogatory 2." The City argues that this response is insufficient because Plaintiff has not identified specific information to support the allegations in each of these paragraphs. The City also argues that some of these interrogatories require Plaintiff to identify specific incidents to support the allegations, and others request information specific to Plaintiff's criminal case. Therefore, the City argues, Plaintiff's reference to his response to Interrogatory No. 2 is not an adequate response to Interrogatory Nos. 3 through 10 and Plaintiff should be required to specifically answer each particular interrogatory.

| **STATEMENT** |

For example, in Interrogatory No. 3, the City requests the following information:

> State with specificity the factual basis for plaintiff's contentions in [paragraph] 43 of your Complaint ... that Defendants in this action systematically suppressed Brady material by intentionally secreting discoverable information in so-called 'street files.' As a matter of widespread custom and practice, these clandestine street files were routinely withheld from the State's Attorney's Office and from criminal defendants and were subsequently destroyed, and identify any specific incidents, witnesses, documents and statements supporting your contention in [paragraph] 43.

The City argues that in responding to this interrogatory, Plaintiff cannot simply refer to his response to Interrogatory No. 2 because Plaintiff has failed to identify "specific incidents, witnesses, documents and statements" supporting the allegations in this particular paragraph of the Complaint.

Similarly, Interrogatory No. 4 asks Plaintiff to "state with specificity the factual basis for your contention in 44 that consistent with the municipal policy and practice described in the preceding paragraphs, employees of the City of Chicago...concealed exculpatory evidence within Street Files which were never disclosed to plaintiff's criminal defense team." The City argues that Plaintiff cannot simply refer to his response to Interrogatory No. 2 in responding to Interrogatory No. 4 because here, the City is seeking specific information regarding what exculpatory and impeaching information was withheld from Plaintiff's criminal defense team.

In his response to the motion to compel, Plaintiff argues that his answers to these interrogatories are sufficient. Plaintiff asserts that the City is using contention interrogatories "to take apart various paragraphs of Plaintiff's complaint, which are not stand-alone allegations but rather part of a comprehensive description of Plaintiff's Monell claim." Plaintiff further explains that the response in Interrogatory No. 2 sets forth the entire basis of Plaintiff's Monell claims, and is therefore responsive to Interrogatory Nos. 3 through 10 as well. Plaintiff points out that he provided the City with documents on May 25, 2010, which include evidence of other false convictions that resulted from Area 2 practices. Plaintiff also states that he intends to gain more information as discovery progresses, but at this point, he has not yet had the opportunity to depose key witnesses and therefore, he cannot support every statement in his Complaint.

We agree with Plaintiff that his responses are sufficient at this point and that the City's request for more specific information is premature. Courts routinely delay compelling responses to contention interrogatories such as these until after "considerable discovery." *In re H&R Block Mortg. Corp. Prescreening Litig.*, 2007 WL 325351, at *7 (N.D. Ind. Jan. 30, 2007*)*; **see also Fed.R.Civ.P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."). As discussed above, Plaintiff's response to Interrogatory No. 2 details the policies and practices employed by the Chicago Police**

| STATEMENT |
|---|

Department for maintaining case files and responding to subpoenas during the relevant time period. Plaintiff states that he has identified all documents and witnesses that he can at this time. Discovery is not set to close until early 2011. The City filed this motion on June 22, 2010, at which time Plaintiff should not have been required to have all the information necessary to support his claims. At this stage in discovery, we believe that Plaintiff's responses to the City's Interrogatories No. 3 through 10 are sufficient. As discovery proceeds, we expect that Plaintiff will continue to obtain information responsive to the City's interrogatories. Accordingly, should Plaintiff not seasonably supplement his responses to these interrogatories, the City is granted leave (after properly conferring with Plaintiff pursuant to Local Rule 37.2) to re-submit a motion to compel.

**Interrogatories Nos. 11 through 17**

The City raises a similar argument with respect to Interrogatories Nos. 11 through 17. Interrogatories Nos. 11 through 15 request that Plaintiff provide the City with any factual support for his contentions that the City had deficient training, supervision, and disciplinary measures for Chicago police officers, which proximately caused Plaintiff's conviction. Interrogatory No. 16 requests information supporting Plaintiff's contention that the City's final policy-maker was deliberately indifferent to the alleged deficient practices, and Interrogatory No. 17 requests support for Plaintiff's contention that the City's policies were the moving force driving the constitutional violations alleged in the Complaint. Once again, in responding to these interrogatories, Plaintiff referred the City to his response to Interrogatory No. 2. The City argues that "Plaintiff's amended response to Interrogatory No. 2 does not answer Interrogatory Nos. 11-17. Plaintiff must either answer the interrogatories or dismiss the claim."

Plaintiff again states that the City's interrogatories "attempt to take apart various elements of Plaintiff's Monell claims." Plaintiff argues that his statements in Interrogatory No. 2 about the Training Bulletin, which instructed officers to withhold information from their notes, and the practice of maintaining separate files is responsive to Interrogatory Nos. 2 through 10 regarding the withholding of exculpatory information, as well as Interrogatory Nos. 11 through 17 regarding the City's training failures or failure to supervise.

We agree with the Plaintiff that its response to these interrogatories is sufficient. As discussed above, in his response to Interrogatory No. 2, Plaintiff outlines the factual support he has for his Monell claims at this time. He describes the process by which files were kept and the fact that supervisors were not required to approve the memos prepared by detectives over the course of their investigations. He details the practice of withholding information from files that did not corroborate "the main story line of the investigation" and he notes supervisors' participation in this practice. Plaintiff describes the Training Bulletin,

| STATEMENT |
|---|

which instructed detectives to withhold information from official files.  Plaintiff also describes the lack of any training regarding file keeping or responding to a subpoena, and he references witnesses that will support these contentions.  We agree with Plaintiff that these statements refer to both the allegations in the Complaint that the City lacked appropriate training and supervision, as well as the allegations in the Complaint regarding the keeping of street files and the withholding of information.   Accordingly, we find that Plaintiff's responses to Interrogatory Nos. 11 through 17 are sufficient, and again, we expect Plaintiff to appropriately supplement these responses as discovery proceeds.

**Interrogatory No. 18**

Next, the City argues that Plaintiff's response to Interrogatory No. 18 is deficient. Interrogatory No. 18 states: "Identify by name (or if you do not know their name, describe by physical description and role) the unidentified employees of the City of Chicago referred to in the Complaint, and identify any and all acts of misconduct you contend each specific unidentified employee committed."   In his response to Interrogatory No. 18, Plaintiff states, in part:

> Plaintiff does not know the names, roles or descriptions of the unidentified officers, which is why they are unidentified.  Plaintiff alleges that he suffered damages because various Chicago police officers, acting pursuant to the City's then existing policy and practices, violated his constitutional rights in the manner alleged in the Complaint.  Because he is the victim of a conspiracy that took place largely outside his sphere of personal knowledge, Plaintiff does not know the identity of everyone who participated, or their specific role... Plaintiff anticipates possibly learning more about the identities/roles of some of the unidentified employees during discovery.  Plaintiff alleges that the specific agents of the City of Chicago who may have violated Plaintiff's rights while acting pursuant to the City's policies and practices include but are not limited to the individuals listed in Defendants' letter of January 27, 2010, including but not limited to 'Detectives Hickey, DiGiacomo, Katalinic, Grunhard, Bennet, Yucaitis, or any other officers whose names and roles are identified in the police reports and/or who testified during Plaintiff's criminal proceedings.'

The City argues that Plaintiff's response is a "non-answer" in that it fails to limit the universe of unidentified employees that Plaintiff may be referring to and it fails to identify any act of misconduct committed by any officer.

In response, Plaintiff argues that "to state the obvious, these persons are unknown because Plaintiff does not know who they are."  Plaintiff submits that he is "just as anxious

| STATEMENT |
|---|

as Defendant" to identify these individuals, and that "it is simply impossible for Plaintiff to give more detailed answers when the persons with the most knowledge of what was withheld (i.e., the individual Defendants) have still not been deposed."

We agree with the Plaintiff that he is not required, at this stage, to have all the information necessary to fully respond to Interrogatory No. 18. As discussed above, at this stage, Plaintiff has outlined in his response to Interrogatory No. 2 the basis for his claims that the City and members of the Chicago Police Department engaged in a practice of suppressing information and keeping "street files" that were never disclosed to criminal defendants. It is not necessary that Plaintiff have information to enable him to identify every City employee who was involved, and any acts of misconduct committed by these employees at this time.

**Plaintiff's Rule 26(a)(1) Disclosures**

Finally, the City argues that Plaintiff's Rule 26(a)(1) disclosures are improper. Rule 26(a)(1) requires that a party must provide to the other parties, "the name and if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

In Plaintiff's supplemental Rule 26(a)(1) disclosure (by letter dated May 3, 2010), Plaintiff states in relevant part:

> Plaintiff intends to rely on witnesses and documents disclosed during <u>Evans v. City of Chicago</u>, Case No. 04 C 3570, a case in which the various counsel in this case, including counsel for the City and counsel for the individual Defendants, were also involved. Specifically, Plaintiff will rely on the individuals identified in Plaintiff Michael Evans' answers to Defendant City of Chicago's Interrogatories ... and documents and individuals identified in Evans' Rule 56.1 statement in opposition to the City of Chicago's motion for summary judgment (Docket Entry Nos. 273-275), including Michael Evans himself.

The City argues that this is improper because a party cannot "simply refer to discovery in another case as a substitute for his Rule 26(a)(1) disclosures in this case." Plaintiff responds that he has satisfied his obligations under Rule 26(a)(1). Without citation to any authority, Plaintiff states that "relying on and incorporating by reference witnesses referenced in Interrogatory answers in another case to support [his] claims is appropriate."

We agree with the City that Plaintiff cannot simply refer to discovery from another

| **STATEMENT** |
|---|
| **case as a substitute for his Rule 26(a)(1) obligations in this case. Although there are clearly overlapping issues and witnesses, the <u>Evans</u> case is completely separate from this case and we do not find that Plaintiff's reference to a number of pleadings in a separate case satisfies Rule 26(a)(1). As a result, Plaintiff is directed to supplement his Rule 26(a)(1) disclosures by specifically identifying the names of those witnesses (along with their address and phone number, if known, and the subject matter of the person's information) he may rely on in support of his claims by 10/25/10.** |