IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ALTON LOGAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 09 C 5471 |
| **CITY OF CHICAGO, et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Alton Logan has sued Chicago police officers Jon Burge, George Basile, Fred Hill, Thomas McKenna, Anthony Katalinic, James Pienta, and Joseph DiGiacomo ("officer defendants") and the City of Chicago ("City") pursuant to 42 U.S.C. § 1983 for violating, conspiring to violate and failing to prevent the violation of, his due process rights (Counts I, II, III) and for violating his rights under the Equal Protection Clause (Count VII). Logan's lawsuit against defendants Burge and Basile also alleges state law claims for malicious prosecution (Count IV), civil conspiracy (Count VI) and for intentional infliction of emotional distress (Count V). Finally, Logan asserts state law respondeat superior (Count VIII) and indemnification (Count IX) claims against the City. Before me now are defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, I grant in part and deny in

part the officer defendants' motions and I grant the City's motion.

I. Background

On January 11, 1982 Lloyd Wickliffe, an off-duty sergeant with the Cook County Department of Corrections, was shot and killed while moonlighting as an undercover security guard at a McDonald's restaurant in Chicago. Alvin Thompson, an off-duty Cook County Sheriff's Officer also working as an undercover security guard at the restaurant, was shot as well. Alton Logan was arrested in connection with the McDonald's shootings on February 7, 1982. Plaintiff was eventually convicted of killing Wickliffe after two trials, the first conviction having been overturned by the appellate court.

Soon after the McDonald's shootings, Andrew Wilson was arrested in connection with the murders of Chicago police officers William Fahey and Richard O'Brien. While preparing for Wilson's trial for the murders of the two officers, Wilson's lawyers, Dale Coventry and Jameson Kunz, asked Wilson if he was involved in the McDonald's shootings. Wilson admitted to his lawyers that he had, in fact, shot Wickliffe, but gave Coventry authorization to reveal this information only after Wilson's death. After Wilson died on November 19, 2007, while serving a life sentence for murdering Officers Fahey and O'Brien, Coventry

and Kunz came forward with an affidavit memorializing Wilson's confession to them. On September 4, 2008, Circuit Court Judge James Schreier vacated Logan's conviction based on actual innocence. Thereafter, Logan filed this lawsuit.

II. Discussion

Summary judgment is appropriate where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the non-moving party must show there is a genuinely disputed fact by "citing to particular parts of the materials in the record." Fed. R. Civ. P. 56(c)(1). I must construe all facts in the light most favorable to the non-moving party and draw all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment will not be granted "if the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

This case raises an initial evidentiary issue, namely, the fact that during their depositions, defendants Burge, Basile, McKenna, Pienta, and DiGiacomo asserted their Fifth Amendment rights and refused to answer any questions. When a witness in a civil case exercises his Fifth Amendment privilege, adverse factual inferences may be drawn from the witness's silence. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) (citations omitted). However, the Seventh Circuit has reiterated the Supreme Court's rule that failure to testify, alone, cannot be taken as an admission of guilt at the summary judgment stage. *Id.* (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Therefore, "[s]ilence is a relevant factor to be considered [only] in light of the proffered evidence." *Id.*

Plaintiff argues that the facts of the case in front of me are distinguishable from the facts in other civil cases to have dealt with the issue of a party's invocation of the Fifth Amendment privilege. Specifically, plaintiff contends that the case law does not adequately address the situation which presents itself here: defendants invoke their Fifth Amendment privilege during discovery and then turn around and seek summary judgment, asserting that the plaintiff has no evidence on which to base his

claims. The posture of this case is, indeed, different from that in *Seguban*, where the movant was the plaintiff and the nonmovants invoked their Fifth Amendment rights. But in that case, the Seventh Circuit also recognized that one party's silence will inevitably disadvantage the party's opponent, whose case suffers from the inability to obtain discovery. *Seguban*, 54 F.3d at 390, n. 4 (citing *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191 (3d Cir. 1994) (recognizing that "invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth" but holding that the defendants' invocation of the Fifth Amendment privilege during discovery did not warrant an order precluding those defendants from presenting evidence in opposition to summary judgment)).

At least two circuit courts have concluded that a party's refusal to answer questions during discovery is "not enough to create an issue of fact to avoid summary judgment." *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999); *Avrigan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991) ("The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production."). The holdings of *Curtis* and *Avrigan* comport with the reasoning of *Seguban*, which noted that allowing an adverse inference to supplant the burden of production would

5

"place too high a cost" on a party's exercise of its Fifth Amendment privilege. *Seguban*, 54 F.3d at 390 (discussing *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Even in the case before me, then, where Logan has been disadvantaged by the failure of defendants Burge, Basile, McKenna, Pienta, and DiGiacomo to answer questions during their depositions, plaintiff must come forward with some other evidence of defendants' involvement in his injuries.

    A.   Due Process Claims Against Officer Defendants

In their motions for summary judgment, the officer defendants argue that plaintiff has failed to identify any material exculpatory evidence that was withheld from him or to show that certain officer defendants were personally involved in the alleged constitutional violations.

To succeed on a claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10, L.Ed.2d 215 (1963), a plaintiff must establish that: "(1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence has been suppressed by the government, either willfully or inadvertently; and (3) the suppressed evidence resulted in prejudice." *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) (internal quotation marks and citation omitted). Evidence is considered to have been suppressed if "(1) the prosecution failed

to disclose evidence that it or law enforcement was aware of before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001).

Plaintiff contends that he has met his burden of production so as to avoid summary judgment. In arguing that he has presented sufficient evidence to create an issue for a jury, plaintiff relies primarily on the affidavit and testimony of Donald White to support the allegation that the officer defendants, and specifically defendants Burge, Hill, McKenna and Katalinic, knew that Wilson, and not plaintiff, had murdered Officer Wickliffe.[1] Defendants, in turn, argue that any

---

[1] Plaintiff also cites to other evidence in support of his *Brady* claim, focusing on two specific areas. First, plaintiff points to an unsigned affidavit purportedly by Andrew Wilson and prepared by Wilson's jailhouse lawyer, Philip McDowell, to support his contention that Burge recovered Wickliffe's revolver from Wilson during Wilson's arrest. Defendants argue that the affidavit, along with McDowell's testimony, is inadmissible hearsay. Because the factual issues raised by White's testimony and affidavit, along with the negative inferences drawn from defendants' Fifth Amendment silence, create a genuine factual dispute, I do not decide whether the Wilson affidavit and McDowell testimony are admissible. There are issues regarding the admissibility of this evidence that will be better dealt with prior to trial. Second, plaintiff argues that there was other exculpatory evidence that was withheld as part of the "street files" practice. However, it is undisputed that plaintiff's criminal defense attorney acknowledged receipt of the street file concerning Logan's criminal case on May 26, 1982. (Pl.'s Resp. to Def. Chicago's L.R. 56.1 Statement, ¶ 25). Even if there was exculpatory information withheld in the street file, it was known to Logan prior to his first trial. Therefore, the street file

information obtained from White was available to plaintiff's attorney's through a reasonably diligent investigation. In addition, defendants argue that White's credibility is so weak that I should not consider the White evidence.

Relying heavily on *Harris*, 486 F.3d 1010, defendants argue that a factfinder could find a *Brady* violation only by relying on a chain of inferences that is improper on summary judgment. However, this case is distinguishable from *Harris* in at least two important respects. In *Harris*, the plaintiff had been convicted of a gas station shooting. Plaintiff's then-defense counsel knew that the gun used in the gas station shooting was also used in a café robbery. Another individual, Chamberlain, had confessed to committing the café robbery. The Seventh Circuit found that the plaintiff's then-defense counsel could have discovered through the exercise of reasonable diligence that the person who had committed the café robbery had confessed to that crime. *Harris*, 486 F.3d at 1015-16. The Seventh Circuit also found that the allegedly suppressed evidence, including the confession, was only favorable after making several inferences. *Id.* at 1016. This was so because much of the evidence in question showed only that the plaintiff had not been involved with the café robbery, but that same evidence did not touch directly upon the plaintiff's involvement in the gas station shooting. *Id.*

---

does not support plaintiff's *Brady* claim.

8

Here, by contrast, White was listed as one of many witnesses in the investigation of the Fahey and O'Brien murders. And it is uncontested that White was not listed as a witness in the McDonald's case. White did not himself confess to either the Fahey and O'Brien murders or to the McDonald's murder. Indeed, plaintiff's theory is that defendants actively concealed any connection between the two crimes. In other words, there is no documentation or report that would have put plaintiff on notice that White had exculpatory information, and as the Supreme Court has recognized, there is no rule declaring that a "prosecutor may hide, defendant must seek." *Banks v. Dretke*, 540 U.S. 668, 696, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004). Defendants have failed to show that plaintiff should have known to question White.

Further, the information that White allegedly shared with the police was clearly favorable to Logan: White allegedly told defendants Burge, Hill, McKenna and Katalinic, that Wilson, and not Logan, committed the McDonald's shooting. There is no chain of inferences necessary to understand that this evidence was favorable to Logan and material to his defense. Defendants also spend a lot of energy arguing about White's credibility. Not only are there disputed issues of fact regarding the circumstances of White's prior statements, but credibility is a question for the jury and is not to be decided on a motion for summary judgment. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th

9

Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202). And while defendants argue I should not credit White's testimony because White is not a credible witness, at least one defendant, McKenna, has refused to answer questions regarding interrogating White about the McDonald's crime on January 11, 1982. The negative inference that flows from defendants' silence on this issue actually bolsters White's testimony and plaintiff's claim that defendants suppressed exculpatory evidence.

Defendants Burge, Basile, DiGiacomo, Pienta and Katalinic also argue that plaintiff has failed to show that they were personally involved in any alleged violation of plaintiff's constitutional rights. To recover under § 1983, a plaintiff must establish "a defendant's direct personal responsibility for the claimed deprivation of a constitutional right." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *see also Stepney v. City of Chicago*, No. 07 C 5842, 2010 WL 4226525, at *5 (N.D.Ill. Oct. 20, 2010) (Zagel, J.) (requiring evidence of personal involvement at the summary judgment stage). Direct participation in the constitutional deprivation is not required. *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). Acting or failing

to act "with a deliberate or reckless disregard of plaintiff's constitutional rights" satisfies the personal responsibility requirement of § 1983. *Id.* Similarly, "if the conduct causing the constitutional deprivation occurs at [the defendant's] direction or with her knowledge and consent," the requirement is also satisfied. *Id.*

Plaintiff has come forward with evidence that defendants Burge, Hill, McKenna and Katalinic were personally involved in the alleged *Brady* violations. As discussed above, plaintiff's witness, White, has testified and stated in a sworn affidavit that he told defendants Burge, Hill, McKenna and Katalinic, that Wilson had shot Wickliffe. Evidence of such knowledge satisfies the requirement of personal responsibility because knowing and withholding exculpatory information from plaintiff would be a constitutional deprivation. Summary judgment is therefore denied as to these four defendants.

Defendants Basile, DiGiacomo and Pienta present a closer case. All three of these defendants invoked their Fifth Amendment privilege during their depositions and refused to answer questions about the extent of their involvement in the investigation. But because a negative inference alone is not enough to survive summary judgment, Logan must produce some evidence to support his claims against defendants Basile, DiGiacomo and Pienta. Logan has presented sufficient evidence

11

with regard to his claims against Basile, but not DiGiacomo or Pienta.

Defendant Basile was one of the officers who, along with Burge, arrested Logan in early February 1982, for the McDonald's murder. (Pl.'s Ex. 41, LOG00173). Basile had also interrogated plaintiff at his home on January 13, 1982. (Defs. Burge and Basile's L.R. 56.1 Statement, ¶ 24). Although this evidence might not be sufficient to withstand summary judgment on its own, when taken with the adverse inferences from Basile's silence, it does create a genuine issue of fact. Summary judgment is denied as to defendant Basile.

Plaintiff references DiGiacomo once in his 56.1 statement of facts, only to state that DiGiacomo was assigned to the McDonald's crime scene. (Pl.'s 56.1 Statement, ¶ 28). Logan does not allege that DiGiacomo was involved in his arrest, interrogation, investigation, or trials. There is no evidence linking DiGiacomo with Logan's prosecution. Similarly, Logan has submitted evidence showing that Pienta was involved in the investigation on January 12, 1982, the day after the McDonald's murders. (Pl.'s Ex. 18, pp. 3391, 3413). But Logan has submitted no evidence showing that Pienta continued to be involved in the investigation or that he played any role in withholding evidence from Logan. Because Logan has not submitted any evidence to support the personal involvement of either

DiGiacomo or Pienta in the deprivation of his constitutional rights, summary judgment is granted as to these two defendants.

    B.   Due Process Claim Against the City

The City seeks summary judgment on plaintiff's *Monell* claim, which alleges that exculpatory material was withheld through the widespread street file practice. The gravamen of the City's argument is that plaintiff has failed to point to any exculpatory material that was withheld from him as a result of the street files practice. Plaintiff counters that pursuant to the street files practice, the official file was cleansed of any information or evidence tending to point to any other suspects.

"The elements of a *Monell* claim are: (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom, policy or practice of the local government unit; and (3) that such action was the cause of the deprivation." *Williams v. Anderson*, No. 09 C 1915, 2010 WL 5014393, at *4 (N.D. Ill. Dec. 2, 2010) (Gettleman, J.) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Municipalities cannot be held liable under a *respondeat superior* theory. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("*Bryan County*"); *Monell*, 436 U.S. at 692. Instead, a plaintiff seeking to impose liability upon a

municipality pursuant to § 1983 must demonstrate that a municipal policy or custom has caused the plaintiff's injury. *Bryan County*, 520 U.S. at 403 (citing *Monell*, 436 U.S. at 694).

Here, plaintiff's *Monell* claim fails on the third prong, causation.[2] As I noted above, it is undisputed that Logan's criminal defense attorney acknowledged receipt of the street file on May 26, 1982. (Pl.'s Resp. to Def. Chicago's L.R. 56.1 Statement, ¶ 25). Therefore, if there was exculpatory information withheld in the street file it was known to Logan prior to his first trial. The alleged practice of withholding exculpatory material in street files simply could not have caused the constitutional injury in Logan's case.[3] Any possible negative inference resulting from the officer defendants' silence during their depositions cannot save plaintiff's *Monell* claim in the absence of other evidence. Therefore, the City's motion for summary judgment is granted. Further, plaintiff concedes that

---

[2] Because I conclude that Logan has failed to satisfy the causation prong of his *Monell* claim, I do not address the issue of whether he has established that there was a widespread practice of withholding exculpatory evidence in street files.

[3] The fact that there is no evidence to support plaintiff's claims based on the street files practice does not affect plaintiff's *Brady* claim against the individual defendants. As discussed above, plaintiff presented evidence that certain officer defendants knew that White had implicated Wilson in the Wickliffe murder. The issue of whether the individual officer defendants violated plaintiff's *Brady* rights by not disclosing this exculpatory information is not dependant on whether their knowledge was documented in a street file.

"unnamed defendants" cannot be served with process or brought into the suit and the "unnamed defendants" are therefore dismissed from the lawsuit.

C. Section 1983 Failure to Intervene and Conspiracy Claims Against Officer Defendants

Plaintiff's failure to intervene and conspiracy claims are contingent on plaintiff's *Brady* claim, and because that claim survives summary judgment as to defendants Burge, Basile, Katalinic, Hill and McKenna, the claims for failure to intervene and conspiracy under § 1983 survive as to these same officer defendants. These claims are dismissed as to defendants DiGiacomo and Pienta.

D. Section 1983 Equal Protection Claim Against Officer Defendants

To succeed on an equal protection claim, a plaintiff "must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). To show "discriminatory effect," a plaintiff is required to show that he (1) is a member of a protected class; (2) is "otherwise similarly situated to members of the unprotected class"; and (3) was treated differently from members of the unprotected class. *Id.*

15

at 636.  In turn, a plaintiff can show he was treated differently by naming individuals in the unprotected group who were treated more favorably or through the use of statistics.  *Id.*  Finally, to demonstrate "discriminatory purpose," a plaintiff must show that the "decisionmakers in [his] case acted with discriminatory purpose."  *Id.* at 645 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *see also Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (further defining discriminatory purpose as implying "that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group").

The officer defendants argue that plaintiff has failed to come forth with any evidence to support his equal protection claim against the officer defendants.  Plaintiff counters that he has identified a number of other alleged victims of defendants' misconduct and that this is sufficient evidence to avoid summary judgment on his equal protection claim.  Specifically, plaintiff names eleven African-American suspects in other criminal matters and claims that these eleven suspects were framed by the officer defendants in this case.  Even if plaintiff's evidence shows what

16

he claims it does,[4] it is not sufficient to sustain his equal protection claim.

At most, plaintiff has shown that other members of the protected group were treated similarly to Logan. But this is not what the equal protection analysis requires. On the contrary, plaintiff would have had to come forward with evidence that similarly situated individuals in the unprotected group were treated differently. As discussed above, direct or statistical evidence can be used to make the required showing. Plaintiff has presented no such evidence. Similarly, plaintiff has not pointed to evidence that the officers were motivated by racial animus in this case. As a result, summary judgement is granted on the equal protection claim.

E. State Law Claims Against Defendants Burge and Basile

Defendants Burge and Basile argue only that the state claims against them should be dismissed because plaintiff has not

---

[4] Based on my review of the record, specifically the portions of the record cited in support of plaintiff's factual statements at ¶¶ 111 - 119, (Pl.'s L.R. 56.1 Statement), the evidence does not support plaintiff's position to the extent that he claims it does. For instance, ¶¶ 111-13 claim that particular defendants in this case also participated in framing other innocent African-American suspects, but the evidence cited in these statements does not support such a conclusion. Similar problems arise in ¶¶ 116, 118. I do not reach the issue of whether this evidence could otherwise be useful for an equal protection claim because plaintiff has not submitted sufficient evidence on discriminatory effect or intent.

adduced any evidence of their involvement in the underlying constitutional violations. Because I have found that plaintiff's claims against both Burge and Basile for the underlying constitutional violations survive summary judgment, summary judgment as to the state claims against him is also denied.

III. Conclusion

For the reasons set forth above, I deny defendants Burge, Basile, Katalinic, Hill and McKenna's motions for summary judgment on Counts I, II and III. I grant defendants DiGiacomo and Pienta's motions for summary judgment on these same counts. I also deny defendants Burge and Basile's motion for summary judgment on Counts IV, V and VI. The officer defendants' motion for summary judgment on Count VII is granted. Finally, the City's motion for summary judgment is granted.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**

United States District Judge

Dated: April 12, 2012

18