IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ALTON LOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 CV 5471 |
| v. | ) | |
| | ) | |
| JON BURGE, GEORGE BASILE, the | ) | Hon. Judge Bucklo, |
| CITY OF CHICAGO, and UNIDENTIFIED | ) | Presiding |
| EMPLOYEES OF THE CITY OF CHICAGO, | ) | |
| | ) | Magistrate Judge Mason |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO BAR
ARGUMENT OR SUGGESTION THAT ANDREW WILSON'S CRIMINAL
DEFENSE LAWYERS ARE RESPONSIBLE FOR PLAINTIFF'S INJURIES**

Now Comes Plaintiff, ALTON LOGAN, by his attorneys, LOEVY & LOEVY, and brings this Motion *in Limine* to bar argument or suggestion that Andrew Wilson's criminal defense lawyers are responsible for Plaintiff's injuries. In support of his Motion, Plaintiff states as follows:

**Introduction**

Since 1982, defense lawyers Dale Coventry, Jamie Kunz, Andrea Lyon, and Marc Miller have known that Plaintiff Alton Logan is an innocent man. That year, these four defense attorneys learned that Andrew Wilson was the real killer of Lloyd Wickliffe. Unfortunately, the attorney-client privilege prohibited them from disclosing this information to any other person during his lifetime. The lawyers decided to draft and

sign an affidavit, recording what they had learned and the fact of Plaintiff's innocence, and they then locked that affidavit away for more than 25 years. It was not until January 2008, after Wilson's death and following a ruling by a judge of the Cook County Criminal Court, that Wilson's lawyers revealed what they knew. *See generally* Maurice Possley, *Inmate's Freedom May Hinge on Secret Kept for 26 Years*, CHICAGO TRIBUNE (Jan. 19, 2008), http://articles.chicagotribune.com/2008-01-19/news/0801180946_1_security-guard-attorney-client-privilege-andrew-wilson; Michael Miner, *The Greater of Two Evils*, CHICAGO READER (Jan. 31, 2008), http://www.chicagoreader.com/chicago/the-greater-of-two-evils/Content?oid=1212988. Hope's lawyer, Marc Miller, followed suit shortly thereafter, attesting that Edgar Hope had confessed Mr. Logan's innocence and Andrew Wilson's guilt.

Plaintiff anticipates that the Defendants may attempt at trial to shift the blame for the injuries that they caused to Plaintiff onto the shoulders of Wilson's defense lawyers. Absent a ruling *in limine* preventing them from doing so, the Defendants will likely present arguments that Wilson's lawyers share responsibility for Plaintiff's prolonged wrongful incarceration. As one example, the Defendants may attempt to argue that, had Wilson's lawyers ignored their attorney-client obligations, Plaintiff would have been released from prison years earlier.

2

For the reasons set out in this motion *in limine*, any argument or suggestion that Wilson's lawyers are responsible in any way for Plaintiff's injuries should be prohibited.

First and foremost, it is the Defendants' *Brady* violations that caused Plaintiff's wrongful conviction and incarceration, not Wilson's lawyers' decision to adhere to their ethical obligations. To take but one example, a man named Donald White alleges that in February 1982, he told Defendants Burge, McKenna that Edgar Hope and Andrew Wilson (and <u>not</u> Alton Logan) were responsible for the McDonald's murder. *See* Exhibit 1 at 40-44 (Deposition of Donald White taken September 17, 2010). This revelation should have come as no surprise to the Defendants – they had executed a search warrant seeking Andrew Wilson just days before and recovered the shotgun that murdered Lloyd Wickliffe among his possessions. *See* Exhibit 2 (February 13, 1982 Memo by Joseph Celovsky) Indeed, that Edgar Hope and Andrew Wilson were partners in crime makes sense – Hope was Wilson's daughters' godfather. *See* Exhibit 3 at 43 (Deposition of Candace Wilson).

To allow the Defendants to suggest that their violations of Mr. Logan's constitutional rights was not the "cause" of Mr. Logan's wrongful conviction would focus the trial on wholly irrelevant side issues and it would guarantee confusion in the jury that would have enormous and unfairly prejudicial impact on

3

Plaintiff. The Defendants had a constitutional duty to turn over evidence exculpating Mr. Logan, and their failure to live up to that obligation is the material issue in this lawsuit. Wilson's lawyers, on the other hand, had an ethical duty to protect from disclosure confidential communications they had with Wilson. The jury in this trial should not be asked to sit in judgment of their decision to abide by that duty, and the propriety of that decision is simply not at issue in this case.

Second, allowing the Defendants to pursue this line of argument would put the Rules of Professional Conduct on trial. Wilson's lawyers engaged in no actionable misconduct whatsoever; all that they did was follow their ethical obligations. A ruling that the Defendants are allowed to argue that their ethical decisions make them responsible for Plaintiff's wrongful conviction and incarceration – in whole or in part – would stand in irreconcilable conflict with the ethical rules that govern attorneys across the United States. Model Rule of Professional Conduct 1.6 governs the attorney-client relationship, and it provides that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent," except in limited circumstances that do not apply here. MODEL R. OF PROF. CONDUCT 1.6(a). The Illinois Rules of Professional Conduct, which governed the actions of Wilson's lawyers in 1982 and today, use the exact same language. ILL. R.

4

PROF. CONDUCT 1.6(a). Wilson never gave permission to his lawyers to disclose that he had admitted to murdering Wickliffe, and so Wilson's lawyers were ethically bound to keep that information to themselves rather than sharing it with Plaintiff or anyone else. A lawyer's adherence to ethical rules is not tortious conduct under any federal or state law, and the Defendants should not be permitted to argue or suggest that these lawyers' actions render them responsible for injuries that were actually caused by the Defendants' own torts. This Court should not allow the trial to become a referendum on the soundness of ethical rules that are in force across the American legal profession.

Third, even if one assumes for the sake of argument that Wilson's lawyers committed some misconduct for which they could be liable (which Plaintiff submits they have not), the lawyers' actions would not constitutes a superseding cause sufficient to break the causal chain between the Defendants' *Brady* violations and Plaintiff's injuries.

"In constitutional-tort cases as in other cases, 'a man [is] responsible for the natural consequences of his actions.'" *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988), quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961). The doctrine of superseding (sometimes supervening) cause functions to cut off a defendant's liability in circumstances where the defendant's actions and the plaintiff's injury are sufficiently

5

unrelated because of some intervening event. *See generally Jutzi-Johnson v. United States*, 263 F.3d 753, 755-56 (7th Cir. 2001). The Seventh Circuit defines "superseding cause" as "something culpable that intervenes between the defendant's *negligence* and the plaintiff's injury, some action of a third party that makes the plaintiff's injury an *unforeseeable* consequence of the defendant's negligence." *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002) (emphases added); *see also Shick v. Illinois Dept. of Human Services*, 307 F.3d 605 (7th Cir. 2002) (citing PROSSER & KEETON ON TORTS § 44, at 312 (5th ed. 1984)).

Again, assuming for the sake of argument that the conduct of Wilson's lawyers is "culpable" within the meaning of this definition (which it was not for reasons explained above), two observations are important to explain why that conduct is not a superseding cause of Plaintiff's injury that might shield the Defendants from liability. First, the superseding cause doctrine applies only in cases where a defendant is accused of acting negligently, *see Collins v. Village of Woodridge*, 96 F. Supp. 2d 744 (N.D. Ill. 2000) (collecting cases), and here the Defendants committed intentional torts. Where someone intentionally harms someone else, it is no defense to claim that a third-party should have mitigated those damages for them. Second, even if the superseding cause is read to apply to intentional torts,

6

there is no basis on which to argue that Plaintiff's injury was rendered an unforeseeable consequence of the Defendants' misconduct by the ethical actions of Wilson's lawyers. Such a suggestion would be absurd. The Defendants' withholding of material exculpatory information in violation of the Constitution directly caused Mr. Logan's wrongful conviction and incarceration. The unconstitutional misconduct and the injury are separated by an unusually short causal chain, and Mr. Logan's injury was the obvious and completely foreseeable result of the Defendants' decision to conceal evidence that would have exonerated Mr. Logan. Wilson's lawyers' decision not to violate their attorney-client responsibilities did not make the consequences of the Defendants' misconduct any less foreseeable.

As the Seventh Circuit explained in *Scottsdale Ins. Co.*, a plaintiff's injury may have many "causes," as the term is understood in everyday use – for example, the plaintiff's presence in the wrong place at the wrong time is usually a cause of injury, as is the very fact of the plaintiff's birth. *See* 299 F.3d at 621. In this case, Mr. Logan's injuries were "caused" in part by the fact that he lived in Chicago at the time of the murder; moreover, Plaintiff's wrongful conviction was "caused" because Wickliffe was murdered in the first place; in the same vein, they were "caused" because Wilson himself did not publically proclaim that he was in fact the murderer of

7

Wickliffe; by the same token, Plaintiff's quarter-century wrongful imprisonment was "caused" by the unfortunate circumstance that Wilson's lawyers were ethically bound not to identify their client as the real killer. "But such 'causes' are irrelevant to liability," the Seventh Circuit has instructed. *See id.* This is because none of these "causes" (nor numerous others) has any effect on the connection between the Defendants' misconduct and Mr. Logan's injury, which is the causal connection important for tort law. As a matter of law, the Defendants cannot argue that the actions of Wilson's lawyers broke the causal chain and rendered the consequences of their misconduct unforeseeable.

Fourth and finally, there similarly is no permissible way for the Defendants to characterize the actions of Wilson's lawyers as contributory or comparative negligence on the part of Mr. Logan. This is the case because, most obviously, Mr. Logan had no control over Wilson's lawyers, and he could not have discovered the information that they kept under lock and key no matter how diligently he and his lawyers might have pursued the identity of the real killer. Moreover, the constitutional violations alleged in this case are intentional torts, and it is well established that contributory and comparative negligence are not defenses to intentional torts. *See*, *e.g.*, *Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 594-97

8

(7th Cir. 2001); *see also Travelers Cas. and Sur. Co. of America v. Wells Fargo Bank N.A.*, 374 F.3d 521, 528 (7th Cir. 2004) ("Neither contributory nor comparative negligence is any defense to an intentional tort."); PROSSER AND KEETON ON TORTS § 65, at 462 (5th ed. 1984). Accordingly, the Defendants cannot reasonably argue that the actions or Wilson's lawyers are evidence of contributory or comparative negligence by Plaintiff.

That Wilson's lawyers knew for decades of Plaintiff's innocence makes this lawsuit unusual among wrongful convictions. This unusual fact, however, should not give the Defendants leeway to blame the consequences of their own misconduct on others. To allow the Defendants to argue or suggest to the jury that Wilson's lawyers are liable for some part of Plaintiff's wrongful conviction and incarceration would focus the trial on irrelevant evidence and confuse the jury with side issues; such arguments would impermissibly ask the jury to pass judgment on the ethical rules that govern legal practice in our country; they would suggest misconduct on the part of Wilson's lawyers where no misconduct has occurred; and they would improperly suggest that Wilson's lawyers acted in a way that obscured the serious consequences of the Defendants' own misconduct. In short, there is no justification for the Defendants to argue that Wilson's lawyers are responsible for Plaintiff's injuries,

9

and all such argument or suggestion along those lines should be barred at trial.

One further matter bears consideration. Defendants have disclosed Thomas Fitzpatrick to opine, generally, that Wilson's lawyers should have disclosed the information they held sooner. See Exhibit 4 (Fitzpatrick's report). As stated above, however, because Defendants cannot blame Wilson's lawyers for their silence, Defendants should likewise not able to create a sideshow to suggest that Wilson's lawyers acted improperly. The resolution of that debate has no bearing on liability and, therefore, should be barred.

WHEREFORE, Plaintiff, ALTON LOGAN, respectfully requests an Order from this Court barring:

- a) Any argument or suggestion that Wilson or Hope's lawyers are responsible for Alton Logan's incarceration;
- b) Thomas Fitzpatrick from testifying, or
- c) Any other relief this Court deems just and appropriate.

RESPECTFULLY SUBMITTED,

_____
Attorneys for the Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
Tara Thompson
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

    I, Russell Ainsworth, an attorney, certify that on August 21, 2012, I served by electronic mail the attached Motion *in Limine* on all counsel of record.

_____
Russell Ainsworth

11