IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

ALTON LOGAN,                          )
                                      )
            Plaintiff,                )
                                      )   Case No. 09 CV 5471
      v.                              )
                                      )
JON BURGE, *et al.*,                  )   Hon. Judge Bucklo,
                                      )   Presiding
            Defendants.               )
                                      )      JURY TRIAL DEMANDED

**PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO ADMIT
STATEMENTS OF ANDREW WILSON, EDGAR HOPE, and JON BURGE**

Now comes Plaintiff, ALTON LOGAN, by and through his
counsel, Loevy & Loevy, and respectfully moves this Court for an
Order admitting Andrew Wilson's and Edgar Hope's various
confessions to the crimes for which Plaintiff was wrongfully
convicted and imprisoned, and Jon Burge's admission that he knew
Alton Logan was innocent. In support thereof, Plaintiff states
as follows:

There is no doubt at this point that Andrew Wilson—not
Alton Logan—was the man who entered a South Side McDonald's on
January 11, 1982 and killed security guard Lloyd Wickliffe with
a sawed-off shotgun. The Defendant Officers were well aware of
Wilson's role in the crime from as early as February 1982, when
they recovered the murder weapon from Wilson's apartment, and

learned from a friend of Wilson's that he had been bragging about shooting up a McDonald's.

After 26 years of wrongful incarceration, Mr. Logan was freed when Wilson died and his attorneys and Hope's attorney from 1982 came forward with a shocking secret – they had created an affidavit in March 1982 attesting that they had learned through privileged sources (their clients) that Mr. Logan was innocent of the Wickliffe murder. Exhibit A at 1-2 (Coventry, Kunz, Miller, and Lyon Affidavit) Based on these attorneys' testimony, as well as several other witnesses who testified that Wilson had confessed to them as well, the Cook County Circuit Court vacated Mr. Logan's confession and granted him a certificate of innocence. Exhibit B at 1 (Certificate of Innocence).

The Defendant Officers have never admitted — although they do not now deny — their role in sending an innocent man to prison for the murder of Wickliffe. Wilson, however, did admit his role in the crime for which plaintiff was wrongfully incarcerated. He did so on numerous occasions, and to numerous people. Wilson's co-conspirator, Edgar Hope, also implicated himself in the crime. Both men are now dead. This Court should permit the jury to hear those confessions, which are admissible under the Federal Rules of Evidence.

## I. ANDREW WILSON AND EDGAR HOPE EACH MADE NUMEROUS STATEMENTS ADMITTING THAT THEY COMMITTED THE MCDONALD'S SHOOTINGS

### A. Andrew Wilson's Confessions

Andrew Wilson first admitted his role in the McDonald's murder shortly after the shootings occurred, when he and his partner in crime, Edgar "Ace" Hope, stopped by the South Side home of their associate, Donald White. Exhibit C at 17-20 (White Deposition). There, in front of a number of people, including Wilson's brother Jackie, Wilson and Hope showed off the guns they had stolen from the two McDonald's security guards, discussed how the crime went down, and argued about the wisdom of Wilson's haste in firing the first shot, which had killed Wickliffe. *Id*.

Shortly after the crime, Wilson and Hope also discussed the McDonald's shootings and their role in the crime in front of Rhonda Howse, Wilson's former girlfriend and the mother of two of his children. Exhibit D at 1 (Howse affidavit).

Wilson next confessed to the Defendant Officers, who questioned him in February 1982 about the murders of two Chicago police officers and about the McDonald's shootings. Exhibit E at 25-26 (Jackie Wilson deposition). He told the Officers that he had participated in the McDonald's robbery, and that he had fired the fatal shot. The Defendant Officers knew that Wilson's

statement was true because they had recovered the murder weapon from the beauty shop where he had been living. *Id.*

In March of 1982, Wilson admitted that he — and not Logan — was involved in the McDonald's shootings to his criminal defense lawyers, Dale Coventry and Jamie Kunz. *See* Exhibit F at 33 (Kunz deposition); Exhibit G at 49-51 (Transcript of January 11, 2008 proceedings); Exhibit H at 27 (Coventry deposition). Wilson confirmed his involvement in the crime to Coventry on two additional occasions over the following months. Exhibit G at 52.

The next year, while incarcerated at Cook County Jail, Wilson confessed that he killed Wickliffe to Joseph Prendergast, a volunteer who was teaching him to read. Exhibit I at 80 (Report of April 18, 2008 proceedings).

Over the years he was incarcerated for the Fahey and O'Brien murders, Wilson also confessed his role in the McDonald's crime to several other inmates, including Aryules Bivens and Philip McDowell. Exhibit J at 2-4 (Bivens affidavit); Exhibit K at 58-62 (McDowell deposition). Indeed, Wilson had extensive conversations about the McDonald's shootings with McDowell, who helped the illiterate Wilson prepare an affidavit attesting to his role in the crimes in great detail. McDowell has retained both the handwritten and typed versions of Wilson's statement about his role in the McDonald's shootings, as well as his extensive notes regarding his conversations with Wilson on

4

the topic. Exhibits L and M (Wilson typed and handwritten affidavits and McDowell notes). McDowell even watched Wilson sign the affidavit he prepared while in prison in front of a notary. Exhibit K at 220 (McDowell Deposition).

Also while incarcerated, Wilson told his daughter, Candace Wilson, on several occasions that he had committed a serious crime for which he had never been held accountable.

**B.  Edgar Hope's Confessions**

Police caught Edgar Hope three weeks after the McDonald's shootings, when Hope killed a police officer with the gun he had stolen from security guard Alvin Thompson during the commission of the McDonald's crime. Hope was charged with both crimes. When he learned that Logan — a man he had never met — had also been charged with the McDonald's shootings, he contacted his lawyer, Marc Miller, to tell him that Logan was an innocent man. Exhibit N at 17 (Report of March 10, 2008, proceedings). Hope also told his lawyer that he did not know Logan; and he said that when he committed crimes, he did so with Wilson. *Id*. He instructed Miller to let Logan's lawyers know that their client was innocent. *Id*.

Later, Hope told fellow inmates at Cook County Jail, including Ronald Kliner, the same thing — that he knew Logan to be an innocent man. Exhibit O at 1-2 (Kliner affidavit).

## II.  THE WILSON AND HOPE CONFESSIONS ARE ADMISSIBLE AS STATEMENTS AGAINST INTEREST

Each of these incriminating statements made by Wilson and Hope would ordinarily be excluded from evidence under the hearsay rule. However, because both Wilson and Hope are deceased and unavailable to testify at trial, and because their statements implicated them in a serious crime and exposed them to criminal liability, these confessions are admissible under Federal Rule Evidence 804(3) as statements against interest.

That Rule permits the admission into evidence of statements that would otherwise be hearsay if the statements tend to subject the declarant to criminal liability, and if they are supported by corroborating circumstances. Fed. R. Evid. 804(3); *American Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 541 (7th Cir. 1999).

Here, there is no doubt that the statements at issue tended to subject Wilson and Hope to criminal liability. Wilson clearly confessed to committing a murder, a crime that has no statute of limitations. *See, e.g.*, *United States v. Westmoreland*, 240 F.3d 618, 627 (7th Cir. 2001) (internal citations omitted) (even statements that merely divulge details of a crime or portions of a conspiracy are against one's penal interest).

While Hope's statements were not so clearly confessions, his insistence that 1) he did not know Logan, but that 2) he

knew that Logan did not play any role in the McDonald's crime, and that 3) he himself always committed crimes with Wilson, strongly suggests that Hope was involved in the McDonald's shootings, and that his co-actor was Wilson. Indeed, that is exactly how Miller, Hope's defense lawyer, understood those statements, and precisely why Miller prohibited Logan's defense attorney from speaking with Hope, and why he instructed his client not to tell anybody else that he and Wilson had committed the McDonald's murder. Exhibit P at 17 (Report of March 10, 2008, proceedings). Hope's later statements to Ronald Kliner were also made against his penal interest, because Hope, at the time, was continuing to seek to overturn his conviction. Hope's statements need not have been direct confessions in order to be considered statements against interest; it is enough that they tended to show that he, not Logan, was involved in the McDonald's shooting. *See, e.g.*, *United States v. York*, 989 WL 65167, at *4 n.3 (N.D. Ill. June 9, 1989) (Williams, J.) (noting that "the against interest exception encompasses statements that 'tend' to subject the speaker to criminal liability as well as direct confessions of criminal guilt"); *see also United States v. Nagib*, 56 F.3d 798, 804 (7th Cir. 1995) (statement that exculpated third party admissible because it implicated declarant in managerial role in conspiracy); *United States v. Paguio*, 114 F.3d 928, 933-34 (9th Cir. 1997) (statement that

declarant's son had "nothing to do with it" admissible because it admits participation in crime); *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978) ("[T]he rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant.").

In addition, both Wilson's and Hope's statements are more than sufficiently corroborated to indicate their trustworthiness. In determining whether the necessary corroboration exists, courts look to (1) the relationship between the declarant and the exculpated party; (2) whether the statement was voluntary and given after *Miranda* warnings; and (3) whether there is any evidence the statement was made to curry favor with authorities. *United States v. Jackson*, 540 F.3d 578, 589 (7th Cir. 2008). An examination of these factors shows that each of Wilson's and Hope's statements was made in circumstances that indicate its trustworthiness.

First, neither Wilson nor Hope had ever met Logan prior to the McDonald's shootings. Exhibit Q at 48 (Logan deposition). They certainly were not family, friends, buddies, or partners in crime. Neither Wilson nor Hope had any reason to lie to exculpate Logan — on the contrary, they had every reason to try to pin the crime on Logan instead. *See, e.g.*, *Nagib*, 56 F.3d at 805 (statements sufficiently corroborated when declarant, although a friend of defendant's, has no reason to falsely

exculpate defendant). Indeed, consider the circumstances under which Wilson confessed to his attorneys: Wilson said that they could not help Logan until after he had died, which turned out to be some 25 years later.

Second, each of the statements made by Wilson and Hope was clearly voluntary. None was made to police or other law enforcement agents. All were made to family, friends, compatriots, fellow inmates, or even the declarant's own attorneys. *See, e.g.*, *Denny v. Gudmanson*, 252 F.3d 896, 903 (7th Cir. 2001) (co-defendant's confessions were sufficiently reliable to be admissible because they "were made in the course of noncustodial conversations with trusted friends and relatives . . . . The circumstances under which they were made offer no reason to suspect coercion, ulterior motive, or desire to curry favor with law enforcement authorities"); *United States v. Robbins*, 197 F.3d 829, 839-40 (7th Cir. 1999) (admitting defendant's statement to his fiancé that he and his co-defendant committed a bank robbery, and finding that statement sufficiently reliable because it was "was made voluntarily in a conversation with . . . the declarant's fiancée and confidante. The circumstances in which the statement was made provide no reason to suspect any coercion, any ulterior motive, any desire to curry favor with authorities, any reason not to tell the truth.").

Finally, there is no indication that any of the statements in question were made to curry favor with the authorities. Neither Wilson nor Hope received any consideration from police or prosecutors as a result of their statements implicating themselves, and exculpating Logan, in the McDonald's shooting. Their statements were not made in order to induce police not to prosecute them, or to convince prosecutors to offer them a reduced sentence. *Cf. United States v. Ochoa*, 229 F.3d 631, 638 (7th Cir. 2000) (statement against interest that implicated co-conspirators lacked necessary trustworthiness where declarant made statement to police in an attempt to avoid prosecution).

In addition, the sheer number of incriminating statements made by Wilson and Hope in a variety of circumstances, to a variety of people, over more than 20 years, also corroborates each statement's veracity. Both men made statements implicating themselves — and exonerating Logan — within days of the McDonald's shootings. Both men continued to make such statements, and continued to maintain Mr. Logan's innocence, over the next two decades. Both men made such statements not just to one other person, but to numerous friends, defense lawyers, and fellow inmates.

Additional evidence, including physical evidence, corroborates Wilson's and Hope's statements. There is no question that the sawed-off shotgun used to kill Wickliffe was

recovered among Wilson's possessions – along with the guns Wilson stole from Officers Fahey and O'Brien after he murdered them. That is powerful corroboration of Wilson's statements admitting to shooting Wickliffe. *See, e.g.*, *United States v. Hills*, 2009 WL 5209407, at *8 (E.D. Pa. Dec. 23, 2009) (admitting statement against interest based on corroborating physical evidence).

Moreover, Wilson and Hope were extremely close. Hope was Wilson's children's godfather, Exhibit R at 43 (Candace Wilson deposition); Wilson was caught after participating in a scheme to break Hope out of jail that ended in the deaths of two police officers, Exhibit S at 9 (Martin deposition); and Wilson and Hope were "running buddies" who worked together in their criminal enterprises. Exhibit P at 17 (Report of March 17, 2008, proceedings).

Because Wilson's and Hope's statements implicating themselves in the McDonald's shootings, and exonerating Logan, are sufficiently corroborated statements against interest, they are admissible under Fed. R. Evid. 804(3)(B).

## III. The Coventry-Kunz-Miller Affidavit is Admissible as an Ancient Document

Plaintiff intends to call a number of witnesses who will testify about the incriminating statements made by Andrew Wilson and Edgar Hope. Among those witnesses will be Dale Coventry and

Jamie Kunz, the defense lawyers who confronted Wilson about his role in the McDonald's shootings and to whom Wilson confessed, as well as Marc Miller, the defense lawyer to whom Hope made incriminating statements.

Just two months after the McDonald's robbery, in March of 1982, the three lawyers prepared an affidavit summarizing the conclusions they drew from what their clients told them about the McDonald's murder — that Logan had been charged with a crime he did not commit. Although the affidavit itself is an out-of-court statement made by the three lawyers, and would normally be inadmissible hearsay, its age and undisputed authenticity render it admissible under Federal Rule of Evidence 803(16), which permits the introduction of a "statement in a document that is at least 20 years old and whose authenticity is established." *See also, e.g.*, *United States v. Firishchak*, 468 F.3d 1015, 1022 (7th Cir. 2006) ("[S]tatements contained in authenticated ancient documents are not hearsay.").

## IV. Defendant Burge's Admission of Alton Logan's Innocence is Admissible

From early on in the investigation into the McDonald's robbery, Jon Burge knew that Alton Logan had not been involved in the crime, and that Andrew Wilson had. He knew because he had recovered the murdered security guard's handgun from Wilson when Wilson was arrested for another double murder, as Wilson's

affidavit attests. Exhibit L (Wilson typed affidavit). He knew because he recovered the sawed-off shotgun that killed Mr. Wickliffe from Wilson's possessions. He knew because Andrew Wilson and Donald White told him as much.

Although Defendant Burge has not admitted it in the course of this litigation, he did, at some point in the 1980s, tell his subordinate, Detective Charles Grunhard, the truth about the McDonald's shootings. He told Det. Grunhard that Alton Logan was innocent, and Andrew Wilson was guilty. Burge has recently confirmed the substance of the statement he made to Grunhard — that Wilson was guilty and Logan innocent — in a filing submitted in his criminal case. Exhibit 1 at 1-2, 19-20 (*United States v. Burge*, Defendant's Response to Government's Motion *in Limine*).

If Detective Grunhard were alive to testify, Defendant Burge's statements would certainly be admissible as statements of a party-opponent, under Federal Rule of Evidence 801(d)(2). Unfortunately, Detective Grunhard is deceased, and the only man who can testify to Defendant Burge's statements is Thomas Bennett, a friend of Det. Grunhard's and a former Chicago police detective, to whom Grunhard revealed Burge's earlier confession. Exhibit xx (Bennett affidavit).

Grunhard's statement to Bennett, however, is admissible under Federal Rule of Evidence 801(d)(2)(E), as the statement of

a co-conspirator. Although no longer a defendant in this case —
because he died in 1990 — Grunhard was one of the detectives who
worked under Burge's command during the McDonald's
investigation. At Burge's direction, Grunhard developed evidence
that falsely implicated Alton Logan in the McDonald's shootings.
With Burge and other Chicago police officers, Grunhard spent
years concealing the police wrongdoing in the McDonald's
investigation, and in the numerous other criminal cases in which
Burge and his men tortured suspects, fabricated evidence, and
concealed evidence. Grunhard admitted that Alton Logan was
innocent only on his deathbed, and only to another Chicago
police officer. These last two factors — that Grunhard made the
statement as he was dying, to another Chicago police detective —
also provide the necessary evidence of trustworthiness to make
the statement admissible under the residual hearsay exception in
Federal Rule of Evidence 807.

WHEREFORE, Plaintiff respectfully requests an order
admitting Andrew Wilson and Edgar Hope's statements against
interest, the Coventry-Kunz affidavit, and Defendant Burge's
statements regarding Plaintiff Alton Logan's innocence.

RESPECTFULLY SUBMITTED,

_____
**Attorneys for the Plaintiff**

Arthur Loevy
Jon Loevy
Michael Kanovitz
Russell Ainsworth
Tara Thompson
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900


**CERTIFICATE OF SERVICE**

I, Russell Ainsworth, an attorney, certify that on August 21, 2012, I served by electronic mail the attached Motion *in Limine* on all counsel of record.

_____
Russell Ainsworth